[Argued October 23; decided November 27, 1893.]

## PIERCE *v.* KELLY.

[S. C. 34 Pac. 963.]

1. CHATTEL MORTGAGE—PRESUMPTION OF FRAUD—CHANGE OF POSSESSION—CODE, § 776, SUBDIVISION 40.—The change of possession of mortgaged chattels necessary to rebut the presumption of fraud raised by subdivision 40 of section 776 of Hill's Code, when the mortgage has not been filed or recorded, must be actual as distinguished from constructive

---

NOTE.—The question here reviewed is also discussed in the case of *Fisher's Estate, ante,* p. 64.— REPORTER.

or legal, and it must be accompanied by such outward acts of ownership as will indicate to the public that the property has changed hands. The possession of the mortgagee should also be exclusive, and not jointly or concurrently with that of the mortgagor.

2. CHATTEL MORTGAGE—EVIDENCE OF FRAUD.—Where an employe of a person operating a store takes a mortgage on the goods, which is not recorded, the fact that he thereafter purchases other goods without disclosing the fact that he claimed possession of the goods in the store under his mortgage, does not necessarily raise a presumption of fraud if he paid for them; but, if the purchase is made through a prior employe of the mortgagor, without notice to the seller of the change in his employment, it tends to show that there was no such change in the possession of the goods in the store.

CHATTEL MORTGAGE—NOTICE TO CREDITORS OF MORTGAGOR—HARMLESS ERROR.—An instruction that a chattel mortgage is not good as against creditors who have no notice of its existence, unless placed on file, is erroneous under the Oregon statute as it existed prior to the legislative session of eighteen hundred and ninty-three, but it is harmless where the record shows that the creditor had notice of the execution of the mortgage, and the jury are expressly instructed that a mortgage is good as to such a creditor although not filed.

APPEAL from Multnomah: E. D. SHATTUCK, Judge.

Action by E. D. Pierce against Penumbra Kelly, sheriff of Multnomah County, to recover possession of a stock of groceries. Pierce claimed to be a mortgagee of the property after condition broken, while the sheriff claimed possession under a writ of attachment in an action brought by E. S. Larsen & Co. against the mortgagor to recover the value of goods, wares, and merchandise sold and delivered to him prior to the making of the mortgage. The defense to the action is that the mortgage is void because made to hinder, delay, and defraud creditors. A trial before a jury resulted in a verdict and judgment in favor of the defendant, from which plaintiff appealed.          AFFIRMED.

Messrs. *Berryman M. Smith*, and *Victor K. Strode*, for Appellant.

*Mr. Daniel R. Murphy* ( *Messrs. John M. Gearin, Julius Silvestone,* and *Geo. A. Brodie* on the brief), for Respondent.

Opinion by Mr. Justice Bean.

The facts as disclosed by the bill of exceptions, are substantially as follows: One Matthias Apach was, on the eleventh day of August, eighteen hundred and ninety-two, and for some time prior thereto had been, conducting, as owner and proprietor, a retail grocery store in Albina, and plaintiff had been in his service as bookkeeper for a number of years, but, it is claimed, had never been paid for his services, although he had demanded payment, or that the amount due him be secured by a mortgage on the stock of goods. On the fifth of August, eighteen hundred and ninety-two, Apach, without the knowledge of the plaintiff, made and executed a promissory note in his favor for nine hundred and eleven dollars, payable on demand, and secured the same by a mortgage on the entire stock of goods in the store. Apach retained the note and mortgage in his possession, without informing plaintiff of their execution, and continued to conduct the business, buying and selling goods as he had been accustomed to do, until the eleventh day of August, when he delivered the note, and, it is claimed, the store and its contents, to plaintiff, but the mortgage was never filed for record although Larsen & Co. had notice of its existence before the goods were attached. The evidence tends to show that plaintiff thereupon opened a new set of books, notified the deliveryman to report to him, and proceeded to sell the goods at retail, replenishing the stock by cash purchases from time to time, Apach remaining in and about the store apparently exercising control as if interested in the business, and to all outward appear-

XXV. Or.—7.

ances there was no change in the business or the manner of conducting it. The business was thus conducted until the twenty-second day of August, eighteen hundred and ninety-two, when the stock was attached as hereinbefore stated. The questions to be determined in this case arise out of certain instructions given and refused by the trial court.

1. The first instruction excepted to is as follows: "In this case you will have to consider another proposition, and that is whether there was such a delivery of these goods as took the place of the recording of the mortgage; the mortgage has never been placed on file, as I understand it, and the question then arises as to the actual, continual change of the possession of the goods; on that point you should consider what the relations of these parties have been before the execution of this mortgage. Mr. Peirce and Mr. Apach are claiming by their counsel, as I understand them, to have occupied the relation of employer and employé before this mortgage was made. Mr. Peirce was about the store there transacting business, delivering goods, receiving moneys, etc., but as the employé of Apach. After the mortgage was made, it is claimed that the position was reversed; that Apach became the employé, and Peirce the principal. I instruct you that in order to have a complete, actual change of the possession of these goods, and to have divested the case of those presumptions of fraud which arise where there is a lack of continual possession of the goods, there should have been some public notice given of the relations they are assuming, that those who deal with the firm might have been able to see and know the change in the situation. And if you believe that to all appearances, so far as the creditors of Apach were concerned, the situation of affairs and control of the goods was the same after the execution of the mortgage as it

was before, then it is one of those cases where the presumption of fraud as to creditors would attach, because the possession had not been changed, and the change in possession had not been continued." By subdivision 40 of section 776 of Hill's Code it is provided, in substance, that every mortgage of personal property capable of immediate delivery which is not filed or recorded shall be presumptively fraudulent as to creditors of the mortgagor unless it is accompanied by an immediate delivery and be followed by an actual and continued change of possession. In this case the mortgage was not filed or recorded, and hence this presumption would attach unless there was an actual and continued change of possession of the mortgaged property. The change of possession necessary to overcome and rebut this presumption must be actual, and not merely constructive or legal; it must be effected in a way calculated to give notice to the public that there has been a change in the ownership or control of the property, and a mere constructive possession, or one taken by words and inspection, will not satisfy the statute: 1 Cobbey, Chattel Mortgages, § 497. The possession of the mortgage must be exclusive, and accompanied with such outward acts and *indicia* of ownership as will apprise the public, and particularly those who are accustomed to deal with the parties, that the goods have changed hands, and the possession has passed from the mortgagor to the mortgagee. There must be a complete change in the dominion and control over the property, and a concurrent or joint possession with the mortgagor is not sufficient (*McKibben* v. *Martin*, 64 Pa. 352, 3 Am. Rep. 588; *Kitchen* v. *Reinsky*, 42 Mo. 437,) although where there is such a change in the possession and control there perhaps can be no legal objection to the employment of the mortgagor to render services in and about the business, as any other agent or employé. This we understand to

be the rule laid down in the instruction complained of, and hence the court did not err in giving it.

2. The next alleged error is that, after the general charge, counsel for plaintiff orally requested the court to instruct the jury that if plaintiff had bought goods after he took possession under the mortgage, without disclosing the fact to the persons from whom the purchases were made, it would not create a presumption of fraud, if he paid for them, whereupon the court further instructed the jury as follows: "That principle is correct, I qualify it in this way—the jury will recollect and call to mind how these goods represented here by the yellow bills, which have been used in evidence, came to be purchased, and who purchased them, and what relation the man who went and brought these goods to the store had been occupying to these parties. If he had been a servant of Apach, and in this transaction was the servant of Peirce, and did not disclose to the creditors the change in his employment, and Peirce did not cause notice to be given, in that event the principle concerning the fraudulent transaction which I have related in the general charge will apply." The objection urged to this instruction is that it left the impression with the jury that such conduct on the part of the plaintiff was a fraud upon creditors, but we think counsel have entirely misconceived the effect of the instruction. Its manifest object and effect, when taken in connection with the general charge, is that while a purchase of goods by the plaintiff, without disclosing the fact that he claimed to have possession under his mortgage, would not necessarily create a presumption of fraud if he paid for them, yet, if such purchase was made through a prior servant or employé of Apach, without some notice having been given to the person with whom he was dealing of the change in his employment, it would tend to show that there had never been such a change in

the possession of the store as to rebut the fraudulent presumption arising from the retention of possession by a mortgagor. And in this view we think there was no error in giving the instruction.

3. The next assignment of error is that the court, in answer to the interrogatory of a juror, said that "A chattel mortgage need not be placed on file to be good as between the parties, and good between all who know all about it, or have been notified. It is not good, unless placed on file, as to creditors who have no notice of its existence." This instruction, it is claimed, is at variance with the opinion in the case of *Marks* v. *Miller*, 21 Or. 317, 28 Pac. Rep. 14, 14 L. R. A. 190, in which it was held that, under the statute as it existed prior to the legislative session of eighteen hundred and ninety-three, (Laws, 1893, 30,), a chattel mortgage given in good faith, although not filed, is valid as against creditors and subsequent purchasers. If, by the instruction complained of, the court intended to say that a chattel mortgage, executed prior to the act of eighteen hundred and ninety-three, is void as to creditors without notice unless placed on file, it was in error, but however that may be the error was entirely immaterial in this case because the record shows affirmatively that the attaching creditor had notice of the execution of plaintiff's mortgage before the property was attached, and the court expressly told the jury that a mortgage would be good as to such a creditor, although not filed. Therefore plaintiff could not have been prejudiced by the error into which the court seems to have inadvertently fallen, having in mind, no doubt, the fact that the rule stated by him prevails by statute in almost every state of the union except Oregon. The other assignments of error have all been carefully examined, and we deem it sufficient to say, without further extending the opinion, that we find no error in the record which

requires a reversal of the judgment, and it will therefore
be affirmed.                                    AFFIRMED.