Argued March 20, decided April 30; affirmed on rehearing July 30, 1912.

## DOSE *v.* BEATIE.

[123 Pac. 383: 125 Pac. 277.]

PLEADING—ANSWER—SPECIFIC DENIALS.

1. In an action against a sheriff for a wrongful levy under an execution issued on an "alleged judgment," an answer, setting out the judgment, and then denying the other allegations of fact contained in the complaint, is sufficient, without specifically controverting the reference to the judgment as an alleged judgment; this not being such an allegation of fact as would require a more specific denial under Section 73, subd. 1, L. O. L., requiring the answer to comprise a general or specific denial of each material allegation of the complaint controverted by the defendant.

PLEADING—ANSWER—SUFFICIENCY OF DENIALS.

2. Under Section 67, subd. 2, L. O. L., requiring a complaint to contain a plain and concise statement of "facts" constituting the cause of action, and section 73, subd. 1, requiring the answer to comprise a denial of each material "allegation" of the complaint controverted by defendant, a denial by the answer of the "allegations of facts" contained in the complaint is sufficient, since, it being inferred that the allegations denied by an answer are allegations of facts, it cannot impair its force to so refer to them.

JUDGMENT—BAR—DISMISSAL OR NON-SUIT.

3. At the time a defendant in an action at law answered, he filed a cross-bill in equity as expressly permitted by Section 390, L. O. L., when a defendant is entitled to relief requiring the interposition of equity. The facts set up in the cross-bill, however, might have been set up in the answer in the law action and would have constituted a perfect defense thereto. On the trial, on motion of the cross-defendant, the testimony in support of the cross-bill was stricken out and the bill dismissed "with-

out prejudice." *Held,* that in view of Section 411, L. O. L., expressly permitting the dismissal of suits in equity without prejudice for failure of proof, and it being probable that the suit was dismissed because the facts set up constituted a good defense at law, the decree in the equity suit did not prevent the subsequent prosecution of the action at law.

EQUITY—JURISDICTION—REMEDY AT LAW—CROSS-BILL.

4. To successfully invoke the protection of Section 390, L. O. L., permitting a defendant at law to file a cross-bill in equity for equitable relief, such defendant must be without a remedy at law as plain, adequate, and complete in respect to the final relief and the mode of securing it as that offered by a suit in equity based on the same facts.

FRAUDULENT CONVEYANCES—FRAUDULENT PURPOSE—EVIDENCE.

5. In an action against a sheriff for a wrongful levy, the evidence indicated that plaintiff leased land and made an agreement with the execution debtor to raise onion sets thereon; plaintiff to pay expenses and to receive a share of the crop. The debtor also leased other land on which he sowed onion seeds furnished by plaintiff, who agreed to advance the necessary money and supplies and pay the debtor for the crop when harvested. The debtor executed a note and mortgage in which it was stipulated that the crop would be delivered to plaintiff when harvested in discharge of the mortgage debt. The debtor testified that in August he was indebted to plaintiff for more than $900, and that, the cost of cultivating being more than he expected, he transferred his interest in the crop to plaintiff; she promising to pay him when the crop was harvested $400 for his interest and for labor thereafter to be performed, and this amount was paid after the levy to prevent garnishment. After the transfer the debtor remained in possession without surrender of the note to him or settlement of accounts. After the transfer the debtor sold certain onion sets and accounted to plaintiff, although under the terms of the transfer she was then indebted to him. *Held,* that the transfer was fraudulent as to creditors.

CHATTEL MORTGAGES—ACTIONS FOR POSSESSION—BY MORTGAGEE AGAINST THIRD PERSON.

6. A chattel mortgagee has such a qualified ownership of the property that after breach of the condition he may maintain replevin, but to recover he must prove a valid or subsisting debt ·or other consideration for the mortgage.

FRAUDULENT CONVEYANCES—BONA FIDE PURCHASERS—NOTICE—BURDEN OF PROOF.

7. In an action against a sheriff for a wrongful levy on property in the possession of the execution debtor, a person claiming to have bought the property from the debtor must show that she was an innocent purchaser for a valuable consideration without notice.

FRAUDULENT CONVEYANCES—BURDEN OF PROOF.

8. Where property levied on under an execution was in the possession of the execution debtor, the burden is on a person claiming to have purchased it from the debtor, under the express provisions of Section 799, subd. 40, L. O. L., to prove that the sale was in good faith, for a sufficient consideration, and without intent to defraud creditors.

ESTOPPEL—CLAIMS BY THIRD PERSONS—CHANGING GROUNDS OF CLAIM.
  9. Where a person, claiming to have purchased from the execution
debtor onion sets levied on under the execution, made no claim to the
sheriff that the onion sets were raised by her, or that she had a claim
thereto under a mortgage for advancements, or as rental of the land
on which they were raised, but based her claim on a pretended purchase
from the execution debtor, she could not, when it was too late for the
execution creditor to take advantage of the true conditions, change the
grounds of her claim.

From Clackamas: JAMES U. CAMPBELL, Judge.

Statement by MR. JUSTICE MOORE.

This action was instituted by Mrs. L. E. Dose against
R. B. Beatie to recover damages. The amended com-
plaint states, in effect, that at all the times mentioned
therein plaintiff was engaged in raising and dealing in
farm produce and other commodities, and on October
17, 1907, and thereafter, was the owner of 45,000 pounds
of onion sets of the reasonable value of 5½ cents per
pound, which crop was then in the possession of her
agent, Oscar Mahler, on the farm of G. H. Koshmeder
in Clackamas County; that during the times specified
the defendant was the sheriff of that county. Clause 5
of the complaint is as follows:

"That on or about said 17th day of October, A. D.
1907, the said defendant wrongfully and unlawfully took
the said onion sets above mentioned from the possession
of said Oscar Mahler, agent of the plaintiff, under a writ
of execution issued out of the circuit court of the State
of Oregon, in the County of Clackamas, upon an alleged
judgment rendered and entered in said circuit court on
the 9th day of March, A. D. 1904, and which judgment
was in favor of the Commercial Bank of Oregon City, and
against said Oscar Mahler et al., for the sum of $126.25,
with interest thereon at the rate of 8 per cent per annum
from the 2nd day of February, A. D. 1904, and the further
sum of $50, with interest thereon from the 2nd day of
February, A. D. 1904, and the further sum of $15, costs
and disbursements, claiming the said onion sets to be
the property of the said Oscar Mahler, whereas the said
onion sets were, prior to and on said date of October 17,

A. D. 1907, the property of this plaintiff, and without the consent of plaintiff sold and converted said property to defendant's own use, and to the satisfaction of the said execution above mentioned, to the damage of the plaintiff in the sum of $2,475."

The concluding averment of the complaint is in substance that about November 6, 1907, plaintiff demanded of defendant a delivery to her of all such onion sets, but he refused to surrender any part thereof. The answer admitted that the defendant was sheriff, but denied generally all other allegations of the complaint. The defendant, as plaintiff, thereupon filed a complaint in equity in the nature of a cross-bill, alleging in effect that he was such sheriff; that Mrs. Dose had commenced an action against him, setting forth the material parts of her complaint; that by consideration of the circuit court of the State of Oregon for Clackamas County, in an action wherein the Commercial Bank of Oregon City, a corporation, was plaintiff, and Oscar Mahler, Rosana Mahler, and others were defendants, judgment was given for that plaintiff for the sums stated in the complaint of Mrs. Dose; that an execution was issued on that judgment, and the plaintiff in this suit, obeying the command of the writ, October 17, 1907, levied upon 25,103 pounds of onion sets which were then in the possession and the property of Oscar Mahler and Rosana Mahler, his wife; that after duly advertising the property it was sold in the manner prescribed by law for a sum of money sufficient only to pay the expenses of the levy and sale, and thereupon the writ was returned; that at the time of such seizure Mahler was not employed by Mrs. Dose, but conspiring with her to defraud such bank and to prevent the collection of its judgment, he made a pretended sale of the onion sets to her, but she never took possession of any part of the property. Issue was joined on this complaint, and a trial had, whereupon the court struck out

all the testimony offered by the sheriff and dismissed his suit "without prejudice." A substituted answer to the complaint of Mrs. Dose was then filed, admitting that defendant was such sheriff. Divisions of the answer are as follows:

"Admits that on or about the 17th day of October, 1907, the defendant took possession of some onion sets from the said Oscar Mahler under a writ of execution issued out of the circuit court of the State of Oregon, for the County of Clackamas, upon a judgment entered and rendered in said circuit court, which judgment was in favor of the Commercial Bank of Oregon City and against said Oscar Mahler *et al.*, for the sum of $126.25, with interest thereon at the rate of 8 per cent per annum from the 2nd day of February, 1904, and the further sum of $50 with interest thereon from the 2nd day of February, 1904, and the further sum of $15 as costs and disbursements, claiming said onion sets to be the property of said Oscar Mahler; but denies each and every other allegation of facts contained in paragraph 5 of said amended complaint; denies each and every other allegation contained in the said amended complaint."

For a further defense the answer set forth facts in effect as stated in the cross-bill. Contending that the denial of "each and every other allegation of facts contained in paragraph 5 of said amended complaint" was insufficient and tantamount to an admission of such facts, counsel for Mrs. Dose moved for judgment on the pleadings; but, the application having been denied, a reply was filed denying the allegations of new matter in the substituted answer.

Before this cause was tried, Mrs. Dose died intestate, and Fred Dose, the administrator of her estate, was by order of court made plaintiff herein. This cause was then tried, and from the testimony given by plaintiff's witnesses, findings of fact were made to the effect that on October 17, 1907, Mrs. Dose was not the owner of the onion sets mentioned; that a pretended sale of such prop-

erty was made to her by Mahler, August 4, 1907, but the feigned transfer was fraudulent and void and the onion sets thereafter continued to be the property of Mahler and his wife; that he was not the agent of Mrs. Dose and never had charge of any of the onion sets as her representative; that defendant did not wrongfully take possession of such property, but lawfully seized it upon execution; that the title of Mrs. Dose to the onion sets was not sold, nor did she sustain any damages; that no part of such property was converted by the defendant, who lawfully sold only the interest of Mahler and his wife therein; and that subsequent to the seizure Mrs. Dose forcibly took possession of all such property, and thereafter the defendant never secured any control thereof. As a conclusion of law, the court found that plaintiff was not entitled to $2,475 or any other sum of money, but that the defendant should recover his costs and disbursements, and, a judgment having been rendered in accordance therewith, the plaintiff appeals.          AFFIRMED.

For appellant there was a brief over the names of *Mr. Elisha P. Morcom, Miss Frances M. Kemp,* and *Mr. Grant B. Dimick,* with oral arguments by *Mr. Morcom* and *Miss Kemp.*

For respondent there was a brief over the names of *Messrs. Latourette & Latourette* and *Mr. John M. Gearin,* with oral arguments by *Mr. Charles D. Latourette* and *Mr. Gearin.*

MR. JUSTICE MOORE delivered the opinion of the court.

It is maintained that an error was committed in refusing to grant a judgment on the pleadings in favor of the plaintiff, on the ground that the denial in the answer of the "allegations of facts contained in paragraph 5 of the amended complaint" is insufficient amounting to an admission of the averments of that clause. The rules of plead-

ing demand that the complaint shall contain a plain and concise statement of facts constituting the cause of action. Section 67, subd. 2, L. O. L. The answer shall comprise a general or specific denial of each material allegation of the complaint that is controverted by the defendant. Section 73, subd. 1, L. O. L.

1. Comparing the clause of the substituted answer which has been quoted with paragraph 5 of the amended complaint, as hereinbefore set forth, it will be seen that the defendant admitted the taking of some onion sets from Mahler, claiming them to have been his property, which seizure was pursuant to an execution issued on a specified judgment. The averment in the complaint that the defendant "wrongfully and unlawfully" took possession of such property is not specifically denied. It will be remembered that the amended complaint referred to the basis of the execution as an "alleged" judgment, which qualifying word is not definitely controverted by the answer. No attempt was made in plaintiff's primary pleading to state that the judgment alluded to was void or fraudulently obtained, and the reference to the determination as an "alleged" judgment is not an allegation of fact or a statement requiring a more specific denial when the judgment mentioned is specifically described in the answer.

2. The averment in the amended complaint that the defendant "wrongfully and unlawfully took the said onion sets," etc., if regarded as an allegation of fact, is sufficiently put in issue by the answer. As a complaint is required to state the facts constituting a cause of action, a denial of each allegation of that pleading implies that the "facts" set forth are controverted, and the use of the word so understood cannot impair the force of the denial. It is believed that no error was committed in refusing to grant a judgment on the pleadings in plaintiff's favor.

3.  It is insisted that the substituted answer set forth the same facts that are alleged in the cross-bill, and that the latter suit having been determined in plaintiff's favor became final, and, such being the case, an error was committed in again trying the issue that had been formerly involved.  One of the regulations applicable to suits in equity reads as follows:

"Whenever upon the trial it is determined that the plaintiff is not entitled to the relief claimed or any part thereof, a decree shall be given dismissing the suit, and such decree shall have the effect to bar another suit for the same cause or any part thereof, unless such determination be on account of a failure of proof on the part of the plaintiff, in which case the court may, on motion of such plaintiff, give such decree without prejudice to another suit by the plaintiff for the same cause or any part thereof."  Section 411, L. O. L.

The decree in respect to the cross-bill states in effect that, Beatie having fully presented his case at a trial thereof, counsel for Mrs. Dose moved to strike out all the testimony so offered and to dismiss the suit, which motion was granted, and referring to the cross-bill the decree declares that "the same hereby is dismissed without prejudice."

4.  In an action at law where the defendant is entitled to relief, arising out of facts requiring the interposition of a court of equity and material to his defense, he may, upon filing his answer therein, also as plaintiff, file a complaint in equity in the nature of a cross-bill, which shall stay the proceedings at law, and the case thereafter shall proceed as a suit in equity, in which the proceedings may be perpetually enjoined by final decree, or allowed to proceed in accordance with such ultimate determination.  Section 390, L. O. L.  In order successfully to invoke this provision of the statute, the defendant in the law action must be without a remedy which, in respect to the final relief and the mode of securing it, either in

whole or in part, is not so plain, adequate, and complete as that offered by a suit in equity based on a statement of the same facts. Section 389, L. O. L.; *Hatcher* v. *Briggs*, 6 Or. 31; *South Portland Land Co.* v. *Munger*, 36 Or. 457 (54 Pac. 815: 60 Pac. 5); *Fire Association* v. *Allesina*, 45 Or. 154 (77 Pac. 123).

When a defendant in a law action interposes an answer, and thereupon as plaintiff institutes a suit in equity in the nature of a cross-bill, such suit must be determined before any further proceedings can be had in the action. Section 390, L. O. L.; *Oatman* v. *Epps*, 15 Or. 437 (15 Pac. 709); *Finney* v. *Egan*, 43 Or. 1 (72 Pac. 136). If the facts stated in the complaint in the suit in equity constitute only a partial defense to the law action, which proceeding must remain in abeyance until the suit has been determined, a decree awarding the relief prayed for in the cross-bill, or for any part thereof, would leave for consideration the remaining questions in the action. *Finney* v. *Egan*, 43 Or. 1 (72 Pac. 136). Where, however, a cross-bill is dismissed for want of equity, the trial of the law action, the prosecution of which was stayed by instituting the suit in equity, is to be resumed, as if the cross-bill had never been filed. *Small* v. *Lutz*, 34 Or. 131 (55 Pac. 529: 58 Pac. 79).

In Oregon a well-recognized distinction exists between actions at law and suits in equity, which characteristic difference cannot be so reconciled as to permit an equitable defense to be interposed to an action at law, but each cause must be tried in its particular forum, though such tribunal is presided over by the same judge. When in a law action the defendant can legally set forth the facts constituting his entire defense, his answer is adequate, and there is no necessity for a resort to a suit in equity in the nature of a cross-bill. In the case at bar the defendant had a plain, adequate, and complete remedy at law, by denying the material averments of the complaint

and setting forth the new matter constituting his defense. It is probable that, when it was discovered that Beatie had a complete remedy at law, the court struck out all testimony given by his witnesses and dismissed the suit, though no demurrer to the cross-bill appears to have been interposed. If a trial of the issue joined in the cross-bill had resulted in findings of fact and of law, and based thereon it had been determined that the averments of the complaint in the suit in equity had not been established, the parties to that suit would probably not have been permitted in the trial of this action again to controvert the disputed question, settled by the decree, if the plea of former adjudication had been interposed. *Small* v. *Lutz,* 34 Or. 131, 141 (55 Pac. 529: 58 Pac. 79). But as the statute expressly permits a suit in equity to be dismissed, upon a trial, without prejudice to the maintenance of another suit by the plaintiff for the same cause or any part thereof, no principle of estoppel is involved herein, and no error was committed in resuming the trial of the law action which had been stayed when the suit in equity was instituted. Dismissing the suit without prejudice restored the *status quo* of the law action, at the point where it had been interrupted, as if, and to the same extent as though, the cross-bill had never been filed.

5. It is insisted that fraud will never be presumed or inferred, and that there was no evidence offered tending to show that the sale of the onion sets by Mahler to Mrs. Dose was fraudulent or void, and, such being the case, an error was committed by the court in the finding of fact to that effect.

The evidence discloses that Mrs. Dose leased from H. Kunzie two and one-quarter acres of land in Clackamas County for a term of seven months from April 1, 1907, and thereupon she entered into an agreement with Mahler by the terms of which he was to raise onion sets on

the premises, and she was to pay certain expenses and receive two-thirds of the crop as her share of the enterprise, and he was to have the remainder, and pursuant to the contract he put in the crop on that tract of land. He also leased from G. H. Koshmeder two and one-quarter acres of land in that county on which he sowed onion seeds furnished by Mrs. Dose, who agreed to advance money and supplies necessary to enable him to raise a crop on that tract, and when the onion sets were harvested she was to pay him therefor three cents per pound. Mahler, on May 11, 1907, gave to Mrs. Dose a promissory note for $1,200 maturing on or before November 1, 1907, and to. secure the payment of the obligation he executed to her a chattel mortgage of all his interest in four and one-half acres of onion sets then growing on the farms of Koshmeder and of Kunzie. It was stipulated in the mortgage, *inter alia,* that Mahler at his own expense would cultivate in a good and husbandmanlike manner the onion sets and at the harvest would immediately deliver the crop to Mrs. Dose to be disposed of by her in discharge of the mortgage debt, and that in ·case of his default, in any particular specified, she was authorized to enter upon the premises, take possession of, care for, and harvest the crop, deducting the expenses thereof and the mortgaged debt from the proceeds arising from the sale of the onion sets.

Mahler testified that when the mortgage was given he owed the plaintiff from $300 to $400; that Mrs. Dose furnished the seed, paid all the expenses of planting and cultivating the ground and the rent of the Koshmeder land, and supplied the witness with groceries; that about August, 1907, the cost of cultivating the crop was more than he had expected; that the onion sets were then very weedy, and not being able to secure any more money or supplies from Mrs. Dose, he was compelled to surrender to her all his interest in the crop, for which she

promised to pay him at the harvest $300 and for his labor thereafter to be performed the further sum of $100; that at the time he consummated the sale of the onion sets the cost of cultivation of the crop, which was paid by her, amounted to $936, or something like that sum; that on October 17, 1907, the defendant levied upon 922 sacks of onion sets which had been gathered and stored in a building; and that after such seizure the witness, fearing he would not receive the money promised for his interest in the crop, demanded and received from Mrs. Dose $400, for which he gave a receipt dated October 21, 1907.

Fred Dose testified: That during the transactions referred to he had been the agent of Mrs. Dose. That the chattel mortgage was given to secure advances and, referring to the sum of $400 paid after the onion sets were seized, and alluding to Mahler, the witness said:

"He came in and demanded his money, and I couldn't blame him for that, because he was afraid it would be garnished in my hands, and I paid him and had him give me a receipt for it."

That after August, 1907, and prior to the seizure, Mahler was permitted to take some "pickle onions," a larger variety than onion sets, and in referring thereto he was asked:

"Did you, as agent for L. E. Dose, authorize him to dispose of any of those?"

He replied:

"Yes, sir; I told him he could. He could dispose of them. But I don't hardly think he did."

On cross-examination, however, this witness could not state where or when such permission was granted.

Mahler, being recalled, testified that 336 sacks of onion sets levied upon were cleaned, and, being weighed, averaged 108 pounds each, and the remainder or 656 sacks of

sets, from which the tops had not been removed, averaged 60 pounds to the sack; that a few days prior to the levy of the execution he took to market 9 sacks of pickle onions, saying, "I sold seven sacks to one place and another place three"; that for the three sacks he received mechandise of the value of $2.25 and in money $.75, which latter sum he paid for his lunch; that for the seven sacks so sold he received $3.50, and though Mrs. Dose then owed him $300 for the sale of his interest in the crop and had promised to pay him $100 for harvesting it, he accounted with and paid over to her 50 cents of the money so received after obtaining a credit of $3.00 for his time and the use of a team in taking the pickle onions to market.

The foregoing is deemed to be a fair summary of all the testimony upon which was based the finding of fact that the sale of the onion sets from Mahler to Mrs. Dose was fraudulent and void. It will be remembered that after the levy of the execution Mrs. Dose, with notice thereof, paid Mahler $400, evidently to prevent the defendant from securing that sum on notice of garnishment. At the time the onion sets were seized, the judg- ment and interest on the several items thereof, not includ- ing the expense of issuing the writ and making the levy, did not exceed $245. In order to defeat the recovery oɪ that sum, Mrs. Dose voluntarily paid out the $300 then due and also the $100, a part of which was unearned; her agent saying he could not blame Mahler for demand- ing the money because it might be withheld by notice of garnishment.

It was not averred in the complaint nor attempted to be proved at the trial that the money advanced on account of the chattel mortgage formed any part of the consideration for the sale of the onion sets, or that such property was released from the lien by cancellation or surrender of the promissory note, or that any settle-

ment or accounting was ever had between the mortgagor and mortgagee. Mahler testified that prior to executing the chattel mortgage he had received from Mrs. Dose $300 or $400, and when he transferred to her his interest in the crop he owed her about $936. It is quite probable that the latter sum included the former, so that the payment of $400, made pursuant to the settlement, and the debt he owed at that time, or $1,336, formed the entire consideration for the property, which, it is alleged in the complaint, was worth $2,475.

Two-thirds of the onion sets produced on the land leased from Kunzie belonged to Mrs. Dose, and she was to have paid Mahler three cents a pound for the entire crop which he raised on the premises leased from Koshmeder. It is impossible, however, to compute accurately the value of her interest in the property in August, 1907, when the purported transfer to her was made. From a careful examination of the entire testimony, we think it directly appears that there was a studied purpose on the part of Mrs. Dose to aid Mahler in an attempt to defraud his creditors, and that she was not an innocent purchaser for a valuable consideration without notice.

Mahler's testimony respecting the nine sacks of pickle onions, which, while being transferred to market, increased to 10, and his explanation of the payment to Mrs. Dose of the money received therefor when she owed him more than $300, shows him unworthy of belief. From the circumstances that no testimony was offered tending to show that the promissory note given by Mahler to Mrs. Dose was surrendered to him, or that any settlement of their accounts was ever made, and from the fact of his continued possession of the property and disposal of a part thereof, we feel satisfied with the finding of the trial court that the sale of the onion sets by Mahler to Mrs. Dose was fraudulent and void.

Sig. 11

6, 7. A chattel mortgage is a restrictive sale, and after a breach of the conditions the mortgagee has such a qualified ownership of the property given as security that under a general allegation of ownership he may maintain an action of replevin against a party for an interference with his rights. *Moorhouse* v. *Donaca,* 14 Or. 430 (13 Pac. 112); *Case T. M. Co.* v. *Campbell,* 14 Or. 460 (13 Pac. 324); *Reinstein* v. *Roberts,* 34 Or. 87 (55 Pac. 90: 75 Am. St. Rep. 564). At the trial of such an action, the plaintiff, in order to succeed, must establish his title to the personal property involved, by proving a valid and subsisting debt or other valuable consideration for the execution of the mortgage. If it be assumed that the same rule prevails in conversion, it was necessary to establish the right of Mrs. Dose to the property by proving the amount of her debt against it. She relied, however, upon a purchase of the onion sets, and in a controversy with Mahler's creditors in relation to the property it was incumbent upon her to show affirmatively that she was an innocent purchaser, for a valuable consideration and without notice of their adverse interests. No attempt was made to prove these facts, and, in the absence of such evidence, we conclude from the entire case that the findings of the court were correct. This deduction renders it unnecessary to consider other alleged errors.

It follows that the judgment should be affirmed, and it is so ordered.                    AFFIRMED.

MR. JUSTICE BEAN and MR. JUSTICE BURNETT dissent from the views here expressed with respect to the title to the property.

Decided July 30, 1912.

ON REHEARING.

[125 Pac. 277.]

Opinion by MR. CHIEF JUSTICE EAKIN.

The defendant, as sheriff, held an execution against Oscar Mahler, and, at the time of the levy on the goods, found them in Mahler's possession in a building situated on the Koshmeder place, which he occupied under a lease. The property attached was onion sets raised and owned by him at the time of the levy, unless he had parted with the title by the pretended sale relied upon here. The sheriff was justified, therefore, in levying upon them as the property of Mahler. Plaintiff had previously taken a chattel mortgage on the growing crop for $1,200, as security for $300, previously advanced, and for further advances thereafter to be made to enable him to cultivate and harvest his crop.

1. It is contended by plaintiff that about the middle of August she made an arrangement with Mahler, whereby she purchased the onion sets from him for $300; and that she was to pay an additional $100 to enable him to complete the harvesting of the crop, which had been commenced then, although at that time he was not in default, and the advances made by her did not exceed $936.

There was no delivery or change of control or possession of the crop. Section 799, subd. 40, L. O. L., provides:

"Every sale of personal property, capable of immediate delivery to the purchaser, and every assignment of such property, by way of mortgage or security, or upon any condition whatever, unless the same is accompanied by an immediate delivery, and be followed by an actual and continued change of possession, creates a presumption of fraud as against the creditors of the seller or assignor, during his possession, or as against subsequent

purchasers in good faith and for a valuable consideration, disputable only by making it appear on the part of the person claiming under such sale or assignment that the same was made in good faith, for a sufficient consideration, and without intent to defraud such creditors or purchasers. * * "

In discussing this subdivision, Mr. Justice Bean, in *Pierce* v. *Kelly,* 25 Or. 95, 99 (34 Pac. 963, 965), says:

"The change of possession necessary to overcome and rebut this presumption (of fraud) must be actual, and not merely constructive or legal; it must be effected in a way calculated to give notice to the public that there has been a change in the ownership or control of the property; and a mere constructive possession, or one taken by words and inspection, will not satisfy the statute."

No such change took place; therefore the sheriff's levy and possession was rightful in the first instance, and the burden was upon the plaintiff to make it appear that the sale was in good faith, for a sufficient consideration, and without intent to defraud the creditors of Mahler.

2. If plaintiff had based her right upon the mortgage when the attachment was made, or when she brought this action, her interests would have been well protected; but she led the creditor to consider the onions as belonging to Mahler, and, after he had acted upon the conditions as he had found them, she asserted absolute ownership of the crop and sought to defeat the creditor, when, in fact, according to her admission, there was due to Mahler $300, as the value of his interest in the crop; and, lest the creditor should learn that fact and secure that sum, she paid it to him after the attachment and before it was due, thus showing a purpose to aid Mahler to avoid payment of the debt. An attaching creditor is deemed a purchaser in good faith, and for a valuable consideration, of the property attached; and the pre-

sumption of law is that the pretended sale of the goods by Mahler to plaintiff was fraudulent, and the burden is upon plaintiff to prove that it was made in good faith.

There are several circumstances, aside from the presumption above mentioned, which tend to show that the sale was intended to aid Mahler to defraud the creditor. These are mentioned in the opinion and fully justify the finding of the circuit court. It may be that plaintiff had, in good faith, a valuable interest in the goods for advances made; but that is not the ground upon which she seeks to recover. She stakes her claim upon the pretended sale, and not upon the mortgage; and she cannot now take a new or different ground of recovery, after it is too late for the creditor to take advantage of the true conditions.

The contention that Mrs. Dose was at least entitled to two-thirds of the crop raised on the Kunzie place, as her share thereof, is not an issue suggested here. If she had sought to claim a portion of the onions by reason of having raised them herself, or as rental, she should have made a specific demand of the sheriff therefor, setting forth the nature and extent of her interest, in the absence of which she has permitted that interest to stand or fall with the validity of the sale. Mahler raised both crops, and was in possession of them, and both are included in the mortgage. There is nothing in the record upon which a court can recognize plaintiff's rights in the crop on the Kunzie place, either as the owner of the whole crop, or of the rental therefor from Mahler, without a specific demand upon the sheriff, disclosing her interest. Such a claim was not at any time contemplated in this proceeding, and the creditor at no time had an opportunity to meet such an issue or take advantage of it; and the same is true of plaintiff's rights under the mortgage.

We adhere to our former opinion.          AFFIRMED.

MR. JUSTICE BURNETT and MR. JUSTICE BEAN dissent.