Argued September 7, reversed and remanded September 19, 1917.

## JONES v. SKILES.

(167 Pac. 505.)

**Pleading—Demurrer—Assumption of Fact.**

1. On a demurrer to a complaint, the allegations in the complaint must be assumed to be true.

**Partnership—Accounting—Cross-bill.**

2. In a law action on notes, where liability is so inextricably in-volved with a partnership transaction that nothing short of an ac-

counting could furnish data necessary to determine the issues of the action, a cross-bill in equity for an accounting is proper.

[As to nature and object of cross-bills, see note in 83 **Am. Dec.** 251.]

From Marion: WILLIAM GALLOWAY, Judge

J. C. Jones filed in the Circuit Court of Marion County, Oregon, Department No. 2, a cross-bill in equity against G. W. Skiles and M. N. Lewis. Defendants interposed a demurrer and the same having been sustained, plaintiff appeals. Reversed and remanded.

Department 1.   Statement by MR. JUSTICE BENSON.

This is an appeal from the order of the trial court sustaining a demurrer to a cross-bill in equity. The facts as gleaned from the complaint are as follows: On June 3, 1913, plaintiff was the owner of a business in Forest Grove, which consisted of stonecutting and the manufacture of monuments. On that day the defendant Lewis entered into a written agreement of partnership with plaintiff whereby he purchased a half interest in such business, agreeing to pay therefor the sum of $3,302.19, which obligation was evidenced by six promissory notes, payable at various intervals, the last of which would mature on June 3, 1916. It was further stipulated that in the meanwhile they should jointly conduct the business, sharing equally in both profits and losses, and that when all the notes above referred to were paid plaintiff would execute to defendant Lewis a good and sufficient bill of sale of such half interest in the business. After a time they moved the business to Salem. On November 7, 1913, plaintiff, at the suggestion of Lewis, purchased certain real estate in Salem, as a location for the business, paying $566.67 in cash and entering into a contract with the owner in regard to deferred payments, this contract being in

the joint names of Jones and Lewis. The total purchase price of this property was $1,700, all of which was finally paid by the plaintiff and out of the business. At the time the partnership was undertaken, the defendant Skiles was in the employ of the firm and so continued until June 12, 1915, when Jones discharged him. Lewis protested against this act and said that if Skiles was discharged he would withdraw from the business and proposed to sell his interest therein to Jones. Prior to this time the partners had executed their joint notes to a bank at Forest Grove for an amount aggregating $2,000, and had turned over to the bank, as collateral, the notes executed by Lewis at the inception of the partnership. It is alleged that Jones has but little education, is ignorant of bookkeeping, and trusted Lewis to act as accountant for the firm; that on August 2, 1915, the date of the alleged sale of Lewis' interest to Jones, the former informed plaintiff that the total assets of the firm were $13,265.09 and the liabilities $9,477.17, and further represented the profits of the business to be an amount grossly in excess of their true value. These representations were false, and known by Lewis to be false, and were made for the purpose of deceiving and defrauding plaintiff into purchasing from Lewis his interest in the business when, in fact, he had no valuable interest therein, since no part of the purchase price notes had been paid by him and he had already withdrawn considerable sums of money for his own use. In reliance upon these false representations, plaintiff entered into an agreement which reads thus:

"This agreement made in duplicate the 2nd day of August, 1915, by and between M. N. Lewis of Salem, Oregon, hereinafter called the 'seller,' and J. C. Jones of the same place, hereinafter called the 'buyer.'

"WITNESSETH: That said seller agrees to and does hereby sell and transfer unto said buyer all his interest in the Capital Monument Works, located at Salem, Oregon, including the physical properties, book accounts, contracts and good-will of said business conducted under the name of Capital Monument Works, for the consideration of $1000.00, to be paid in the manner and at the time hereinafter specified: $100.00 in cash; $100.00 in sixty days; $100.00 in ninety days; $200.00 in six months and $500.00 in one year. All deferred payments to draw interest at the rate of six per cent. per annum until paid. Said indebtedness being evidenced by promissory notes signed by said buyer.

"In consideration of said sale said buyer agrees to assume all obligations outstanding against said business conducted under the name of the Capital Monument Works, and which was a part of said partnership.

"Further, it is understood that the seller's title in said property and business shall be retained by him until the purchase price of $1000.00 and interest is fully paid and until said seller is released from any liability on account of four promissory notes, aggregating $2000.00, payable to the First National Bank of Forest Grove, Oregon, as well as certain promissory notes heretofore given by the seller to the buyer and now hypothecated with said bank as security to insure the payment of said four promissory notes, aggregating $2000.00.

"It is a provision of this agreement, and it is mutually agreed that said seller shall remain in the employ of said Capital Monument Works in the capacity of traveling salesman having for his duties the selling of monuments, and shall remain in such employment until released from any legal liability on account of said four notes given to the First National Bank of Forest Grove, and such further time as is mutually agreeable to the parties to this contract.

"In consideration of such services said buyer agrees to pay said seller one-half of all the profits realized from sales made by said seller, to be paid to said seller

whensoever the purchase price for said monument has been paid.''

It is averred that all these wrongful acts and others which are set out in the cross-bill were part of a conspiracy between Lewis and Skiles to secure for their own use and without consideration, plaintiff's business; that in pursuance of such collusion and conspiracy Lewis assigned to Skiles three of the four notes mentioned in the contract of sale above set out, and had begun actions at law to recover thereon from plaintiff; and that Skiles took the notes with full knowledge of the fraud and with full knowledge of all the defenses thereto and paid nothing for them. It is further alleged that Lewis did not keep true and correct accounts of the transactions of the firm, and plaintiff is still unable to obtain a true statement of its affairs at the time of the alleged sale on August 2, 1916. In October, 1915, Skiles and L. J. Lewis, the wife of defendant Lewis, established a similar business at Beaverton with defendant Lewis acting as manager and since then have, as far as possible, diverted all business away from plaintiff to their own plant. It is also asserted that at the time of the alleged sale to Jones, Lewis had in his possession designs, samples and personal property belonging to plaintiff which he refuses to return and which have since been in use by defendants. Plaintiff having made final payment upon the real estate heretofore mentioned, has been unable to obtain a deed thereto because Lewis refuses to quitclaim the same. Lewis still claims an interest in plaintiff's business by reason of the unpaid notes, but has done nothing in support or aid thereof. It is also alleged that Lewis is insolvent. The prayer is for an accounting of the partnership affairs; that plaintiff be decreed to be the exclusive owner of the business; that the con-

tract of sale to Lewis be canceled; that the actions upon plaintiff's notes be perpetually enjoined; and that plaintiff have judgment for the amount of the promissory notes given by Lewis in payment for his partnership in the business and for general relief.

REVERSED AND REMANDED.

For appellant there was a brief and an oral argument by *Mr. Robert C. Wright.*

For respondents there was a brief over the names of *Mr. Everil M. Page* and *Messrs. McNary & McNary,* with an oral argument by *Mr. Page.*

MR. JUSTICE BENSON delivered the opinion of the court.

1, 2. The foregoing statement does not include all the allegations found in the complaint, but enough has been set out to show that plaintiff's liability upon the promissory notes sued upon in the actions at law is so inextricably involved with the partnership transactions that assuming these allegations to be true, as we must upon demurrer, nothing short of an accounting of such partnership business could furnish the data necessary to justly determine the issues of the actions at law. It is quite true as said by this court in *Dose* v. *Beatie,* 62 Or. 308, 316 (123 Pac. 383, 125 Pac. 277), that:

"When in a law action the defendant can legally set forth the facts constituting his entire defense, his answer is adequate, and there is no necessity for a resort to a suit in equity in the nature of a cross-bill."

But along with this statement there runs another, equally important, which is well expressed in *Tooze* v. *Heighton,* 79 Or. 545, 554 (156 Pac. 245), as follows:

"If, however, the defense available at law is not as plain, adequate, complete, practical and efficient as a defense on the same facts in a court of equity, a cross-bill may be interposed."

The cross-bill in the present case alleges facts constituting a partnership, alleges fraud and conspiracy to wrong plaintiff, and alleges facts tending to show that the notes in question are a part of these involved transactions. We think, therefore, that the trial court erred in sustaining the demurrer. The decree is reversed and the cause remanded with directions to overrule the demurrer.          Reversed and Remanded.

Mr. Chief Justice McBride, Mr. Justice Burnett and Mr. Justice Harris concur.