IN THE MATTER OF THE ESTATE OF GEORGE B. WARREN.
APPEAL OF THE GRAND RAPIDS SAVINGS BANK.

52   557
98   474;
52   557
108  178
52   557
120    8
f 120   10

*Bank debts—Liability of non-resident stockholders.*

1. The estate of a non-resident stockholder in a bank may be held rata-bly liable for debts of the bank that matured before the passage of Act 141 of 1877, and to such debts the limitations imposed by that Act as to service within the jurisdiction, cannot apply. And a judg-ment against the corporation is prima facie evidence of the liability; and the entries on the stock-ledgers are admissible to show that de-cedent was a stockholder.

2. A shareholder in a bank is, as regards creditors, not only a surety for the bank but as one of the associates therein, he is held to have un-dertaken, by the terms of association, to be bound for the debts which it contracts. How. St., § 3174. And the liability of th shareholders is commensurate with that of the corporation and extends to costs and interest on judgments.

3 A statute giving the creditors of a banking corporation a new rem-edy against stockholders cannot affect those who took shares in the corporation before its passage; nor can it, so far as existing claims are concerned, supersede the remedies in force when they arose and in reliance upon which they were contracted.

Error to Kent.   (Montgomery, J.)   Jan. 25—Feb. 6.

Appeal from disallowance by probate commissioners of claim against estate.   The estate brings error.   Affirmed.

*Norris & Uhl* for appellant.   Under the individual lia-bility law in Michigan a stockholder is a mere surety (*Hanson v. Donkersley* 37 Mich. 184. *Peck v. Miller* 39 Mich. 594; *Powell v. Eldred* id. 552) for the debt con-tracted, and not for judgment on it and costs: *Bailey v. Bancker* 3 Hill 188; *Moss v. McCullough* 5 Hill 134; *Witherhead v. Allen* 3 Keyes 562; *Jackson v. Griswold* 4 Hill 522; *McMahon v. Macy* 51 N. Y. 164; *Thomas v. Hubbell* 15 N. Y. 405; *Rorke v. Thomas* 56 N. Y. 565; judgment against the principal alone is, as a general rule, evidence against the surety of the fact of its recovery only

and not of any fact which it was necessary to find in order to recover such judgment: Brandt on Suretyship § 524; *Miller v. White* 50 N. Y. 137; *Thomas v. Hubbell* 15 N. Y. 405; *M'Kellar v. Bowell* 4 Hawks 34; *Douglass v. Howland* 24 Wend. 53–59; as for cases adverse to this view: *Belmont v. Coleman* 21 N. Y. 96 and *Slee v. Bloom* 20 Johns. 669 are questioned if not overruled in *McMahon v. Macy* 51 N. Y. 162–3; *Moss v. Oakley* 2 Hill 265 is criticised in *Moss v. McCullough* 5 Hill 134; *Moss v. McCullough* 7 Barb. 279 is doubted in *Miller v. White* 50 N. Y. 143; the following decisions rest wholly on the express words of a statute: *Marcy v. Clark* 17 Mass. 333; *Holyoke Bank v. Goodman Paper Co.* 9 Cush. 578; *Farnum v. Ballard Vale Machine Shop* 12 Cush. 510; *Utley v. Union Tool Co.* 11 Gray 140; as to the effect as evidence of judgments against a principal, see *Bridgeport Ins. Co. v. Wilson* 34 N. Y. 281; *Annett v. Terry* 35 N. Y. 261.

*Taggart & Wolcott* for appellee.

COOLEY, C. J.  This case was tried in the circuit court upon an appeal from the report of commissioners on claims appointed by the probate court.  The circuit court, sitting without a jury, made the following findings:

"1. The Grand Rapids Savings Bank is a corporation doing business at the city of Grand Rapids and elsewhere in the State of Michigan.

2. On about the month of March, 1871, the Exchange Bank of Big Rapids was organized under the general banking law of the State of Michigan; the capital stock of said bank was fixed at one hundred and fifty thousand dollars, divided into one thousand five hundred shares of one hundred dollars each.

3. That George B. Warren, now deceased, who was a resident of the state of New York, subscribed for fifty shares of the said capital stock and paid the regular assessment of fifty per cent. of the face thereof, which was called in for the working capital of the bank soon after the last date mentioned.

4. The said Exchange Bank of Big Rapids commenced

business in 1871 and carried on a banking and exchange business at Big Rapids, Michigan, until about the year 1875, when, it having become deeply involved, its business was discontinued.

5. The said George B. Warren continued to hold his aforesaid stock in said bank until the time of his death in the year 1879.

6. Between the 26th day of July, 1873, and the 13th day of April, 1874, both inclusive, the Exchange Bank of Big Rapids became liable to the Grand Rapids Savings Bank, as endorser of six promissory notes, all of which were dishonored and unpaid at maturity. Judgments were thereafter recovered in the circuit court for the county of Mecosta, by the Grand Rapids Savings Bank, against Exchange Bank of Big Rapids and others, for the sum due and unpaid upon said several notes. One of said judgments was recovered October 12, 1875, and the remainder of them October 24, 1876. A writ of execution was issued October 18, 1875, upon the first of said judgments, which writ was addressed to the sheriff of the county of Mecosta, and was in due course returned by the sheriff wholly unsatisfied. A writ of execution was also issued October 30, 1876, upon each of the judgments recovered October 24, 1876, all of which writs were addressed to the sheriff of the county of Mecosta, and were in due course returned by the sheriff wholly unsatisfied. The aggregate amount remaining due and unpaid upon said judgments, including interest to April 30, 1883, is the sum of twenty-eight thousand four hundred and eighty dollars and seventy-three cents ($28,480.73).

" From the foregoing facts I find the following conclusions of law :

1. That no demand for the framing of any issue in this cause having been made by either party, and both parties having repeatedly noticed the cause for trial in this court, and the questions involved being such as appear to the court capable of trial and determination without the framing of any formal issue, it was competent for the court to proceed to try the cause without the framing of a formal issue, and any objection upon that ground must be deemed to have been waived.

2. That the remedy given by Act number 141 of the Session Laws of 1877, is not exclusive of the remedy claimed in this cause.

3. The entries in the stock-ledger of the Exchange Bank

of Big Rapids are competent evidence to show that George B. Warren was a stockholder in that bank, although the same fact was fully proven by the testimony of the witnesses sworn upon the trial, and the letters of George B. Warren.

4. That the Grand Rapids Savings Bank, appellant, is entitled to recover judgment in this case against the estate of George B. Warren, deceased, for the sum of nine hundred and fifty-three dollars and fifty-seven cents ($953.57), that being the ratable proportion due from the said estate as owner of fifty shares of the capital stock of the Exchange Bank of Big Rapids of the entire $28,607.03, due the Grand Rapids Savings Bank from the Exchange Bank of Big Rapids, upon the judgments aforesaid."

Upon these findings judgment was rendered against the estate in the circuit court, and the case is brought to this Court by writ of error.

Proof of the plaintiff's case was made by showing by the stock-ledger of the Exchange Bank of Big Rapids that Warren in his life-time had a certain amount of stock in that bank which did not appear to have been transferred, and then by showing a judgment recovered by the plaintiff against that bank. This showing gave a basis upon which to compute the liability of the defendant estate. It is insisted on the part of the defense that the judgment against the bank was not evidence of the demand as against the stockholder. It is admitted that it would have been evidence under the General Banking Law before the amendment made to it in 1871. By the original law suit against a stockholder was only to be brought after return of execution against the bank, unsatisfied in whole or in part; and the recovery against a stockholder was upon the basis of the judgment already obtained against the bank; Comp. L. 1857 p. 1648 § 40; but this was so amended in 1871 as to provide that "the officers and stockholders of every corporation or association formed under this act shall be individually liable for all debts contracted during the term of their being officers or stockholders of such corporation or association, equally and ratably, to the extent of their respective shares of stock in any such corporation or associa-

tion." How. St. § 3174. There is no doubt, we think, that before this amendment the judgment against the bank would have been evidence against the stockholder; whether conclusive, we need not determine; but we doubt if there was any purpose in the amendment of 1871 to introduce any new rule of evidence, or to make the remedy of the creditor in any respect more difficult or uncertain. On the contrary, the purpose would seem to have been to make the remedy of the creditor more speedy and certain, and to permit him, if he should so elect, to proceed against the shareholders more directly. The shareholder, it is true, occupies as regards the creditor the position of surety for the bank; *Hanson v. Donkersley* 37 Mich. 184; but he is something more than a surety; he is one of the associates in the bank, and by the very terms of the association he is deemed to undertake for the debts which the bank contracts. *Bank of Australasia v. Nias* 16 Q. B. 717; *Copin v. Adamson* L. R. 9 Exch. 345. And a judgment purporting to be rendered for a debt of the corporation is at least prima facie evidence that a debt was contracted, if not conclusive. *Milliken v. Whitehouse* 49 Me. 529; *Wilson v. Pittsburg &c Coal Co.* 43 Penn. St. 424; *Hawes v. Anglo-Saxon Co.* 101 Mass. 385, 397; *Grund v. Tucker* 5 Kan. 70; *Donworth v. Coolbaugh.* 5 Ia. 300; *Bohn v. Brown* 33 Mich. 257, 263. In New York, where the decisions have been somewhat conflicting, a different view is taken, and a creditor who pursues the shareholders is not permitted to rely upon the judgment against the corporation, but is compelled to make proof of the indebtedness upon which the judgment was recovered. *Miller v. White* 50 N. Y. 137, and cases cited. The reason for this conclusion is said to be that statutes giving this remedy are highly penal. *Hastings v. Drew* 76 N. Y. 9; *Stephens v. Fox* 83 N. Y. 313. A statute giving creditors a remedy against corporate officers for official defaults is certainly penal: *Breitung v. Lindauer* 37 Mich. 217; but we cannot class in the same category the statute upon which this claim is based. All the shareholders assent to it when they form the corporation,

and it imposes upon them no liability except to pay the debts contracted for their own advantage. And their undertaking to do this is supposed to be relied upon by the party contracting with the corporation and giving it credit.

It is contended, however, that the Legislature of 1877 provided for these cases a different remedy to that which has been sought in this case, and in express terms made it exclusive. The statute referred to is found in Public Acts, 1877, p. 129. It provides by its first section that "whenever, by the Constitution or laws of this State, the stockholders of any corporation are individually liable for any debts of such corporation, the remedy for the enforcement of such liability shall be as hereinafter prescribed, and *not otherwise;* provided, that this Act shall not apply to cases where the suit is for labor, and the action is brought by the person who performed the labor." The Act then proceeds to make provision for suits after judgment against the corporations themselves, and among the requirements are that process shall be personally served within the State. And apparently the Act contemplates no redress against the estates of deceased stockholders. The fourteenth section provides that "all acts and parts of acts inconsistent with this act, or giving any other or different remedy, or form of remedy, are hereby repealed."

The liability for which this proceeding is instituted arose previous to the passage of this statute, and the claimant at the date of this statute had a right to recover its demands of the stockholders of the Exchange Bank of Big Rapids, on the failure of the bank to pay them. If the Act of 1877 is to be applied to these demands, it takes away the right as to all the stockholders who are non-residents, unless they voluntarily come to the State so that process may be served upon them. It also enables any resident stockholder to escape liability by absenting himself from the State so that process may not be served. And apparently it takes it away as to all estates of deceased stockholders. But an act which could have this effect would be clearly inoperative, at least as to the cases in

which its enforcement would release parties before liable, because it would to that extent impair the obligation of contracts. It would be inoperative, therefore, as to this estate. And this, we think, not only in so far as it undertook or assumed to give a new remedy but also in so far as it took away those which existed before.

We agree, therefore, with the circuit judge, that the claimant was entitled to prove its claim as was done against the estate. We also think that the liability of the shareholders is commensurate with that of the corporation itself, and extends to costs and interest on the judgments.

Some questions of evidence which were raised we think were rightly decided, and we discover no error in the record requiring a reversal. The allowance of the claim will therefore stand affirmed, and will be certified to the circuit and probate courts. The claimant will recover his costs of this Court and of the circuit court.

The other Justices concurred.