[No. 5941.]

THE FARMERS' PAWNEE CANAL CO. v. HENDERSON.

1. **Evidence — Parol — To Explain Writing — Agreement** in writing of an irrigating company to convey certain water rights to a party named, "to be free from all assessments * * * until used by him or his assigns," or sold to other parties, parol evidence is admissible to show that the consideration proceeded from another party who was the real beneficiary in the agreement, and that such beneficiary was understood to be entitled to the exemption.—(43)

A pledgee of the stock is not a purchaser in such sense that the stock in his hands becomes liable for the assessment.—(45)

2. **Pledgee of Corporate Stock—Rights—**A pledgee of corporate stock may maintain an action to compel an assignment thereof to him, and to restrain the enforcement of assessments illegally made thereon.—(45)

3. **Equity—Looks to the Substance of the Transaction—**The agreement of an irrigating corporation to convey to a party named certain water rights "to be exempted from all assessments until used by the party or his assigns" is not defeated by the adoption of a plan by which the shares of the corporation evidencing the water rights are issued, in lieu of a deed thereof, though by the charter and by-laws of the company the shareholders are liable for assessments.—(44)

*Error to Logan District Court*—Hon. EDWARD E. ARMOUR, Judge.

Mr. J. P. BROCKWAY, Mr. H. E. LUTHE, Mr. C. R. BELL, and Messrs. NAGLE & SIMMS, for plaintiff in error.

Messrs. ALLEN & WEBSTER, for defendant in error.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The Pawnee Land & Canal Company, which is referred to herein as the "old company," owned an irrigating canal in Logan county, through which it made two distinct appropriations for irrigating purposes. It sold rights to the use of water carried by the ditch, with the understanding that when three-fourths of its estimated capacity were sold, the purchasers should become entitled to a deed from the appropriating, to a new, company, to be formed by them for that purpose, conveying the same, and all its appurtenant water rights and other property. The contingency contemplated having arrived, the new company was formed by the purchasers, called The Farmers' Pawnee Canal Company, which is designated as the "new company." Certain differences existed between the interested parties which were finally settled. This adjustment took the form of a written contract between Willard Teller, in whose name all the capital stock of the old company stood, and the new company. It provided, *inter alia,* that Teller should cause the old to convey to the new company all the property of the former, on the express condition and consideration that the new company should sell and convey to him, "for the stockholders of the old company, fifty full-paid water rights of the new company; which, though they could

participate only in the second, but not in the first, appropriation of water, were to be free from all assessments levied by the company for the purpose of maintaining and operating the ditch and keeping it in repair, "until such time as the said water rights shall have been used by the said Teller, *or his assigns,* or shall have been sold by him to other parties; it being the intention of this agreement to exempt said fifty water rights from all assessments of every kind until the same are actually used by the said Teller, *or his assigns,* or until the same have been actually sold to other parties." The plan adopted by the new company, under its charter and by-laws, was not to convey to its stockholders and consumers these water rights by deed, but to issue to them shares of stock, which represented not only ownership of the physical ditch, but also the water rights and all its other property. Under this agreement between the new company and Willard Teller, the latter caused the old company to make the agreed conveyance, and he thereby became entitled to 200 shares of the capital stock of the new company, the issue being at the ratio of four shares of stock to each water right. Of the 200 shares, 196 were issued directly to Teller, and the other four to some other person to whom they were actually sold. After Teller got the 196 shares, the indebtedness of The Henry Investment Company to him was paid or satisfactorily adjusted, and the 196 shares of stock of the new, which represented the fifty water rights of the old company that had been pledged as collateral security for such debt, were reassigned to The Henry Investment Company, the real owner, and the transaction was noted on the books of the company as the statutes of this state and the by-laws of the company require. Still later, The Henry Investment Company became indebted to plaintiff, George A. Henderson,

and the 196 shares of stock transferred from Teller to it were pledged by the latter, as collateral security for the payment of this debt, and the certificates duly assigned to him with power of attorney to have them properly transferred. After the reassignment of the stock from Teller to The Henry Investment Company, and before the pledge to plaintiff, the new company levied various assessments upon it, for the purpose of maintaining and operating the ditch, although the water, represented by the stock, was never used, either by Mr. Teller, The Henry Investment Company, or any one else. The plaintiff, as he must do to protect his rights as against creditors or subsequent purchasers of the pledgor, presented to the secretary of the company the certificates to have the transfer entered upon the company books, but the latter refused to do so unless the levied delinquent assessments were paid by him to the company, threatening, under the provisions of its by-laws so providing, to forfeit and sell the shares if plaintiff failed to pay. The latter refused to pay the assessments, claiming that they were void, and thereupon brought this action against the new company and its secretary to have the assessments so adjudged, and to compel a transfer of the stock on the company books, upon payment of the costs of transfer. The defendant filed an answer, in which it denies that The Henry Investment Company was the equitable owner of the stock, and that Willard Teller was only the legal owner, and that it was ever understood that any of the stock in question could be transferred or assigned by Willard Teller to The Henry Investment Company, so as to escape assessments. By way of cross-complaint, is set forth the organization of the new company, and averments are made that, by its charter and by-laws, it had the right to make the assessments in question, and that they

are a legal charge against the stock, and that, under the contract pleaded in the complaint, the stock was free from assessments only while it was owned by Willard Teller himself, and that the transfer thereof by him to The Henry Investment Company was in law a sale, which made the stock liable to assessment. Defendant prayed that the assessments mentioned be declared to be valid and binding against the stock in the hands of plaintiff, and that he be required to pay the same to the defendant within a reasonable time, and, upon his failure to do so, that defendant may be authorized to sell the stock and to apply the proceeds of the sale upon the assessments, and for a deficiency judgment against plaintiff if there be any deficiency. Upon final hearing, the plaintiff's evidence, in the view of the court, sustained the material allegations of the complaint, the defendant offering no evidence, and the court found the equities in favor of plaintiff and rendered a decree adjudging the assessments void and ordering the secretary of the company to transfer the certificates of stock upon the company books to the plaintiff, upon the payment of the legal charge therefor. Defendant has appealed.

. Such only of the propositions argued as we think controlling, will be considered. The others are not overlooked, but we regard them either as not pertinent, or not important, and their resolution, either way, would not affect our decision.

The first contention is, that the complaint, as amended, does not state facts sufficient to constitute a cause of action. It is said that the complaint, which recites the agreement entered into between Willard Teller and the new company, shows on its face that the exemption from assessment was limited to Willard Teller himself, and that when he transferred, or assigned, the same to The Henry Invest-

ment Company, the stock at once became assessable, because the transaction was equivalent to a sale. This is considered in connection with the further point that oral evidence was improperly received, to the effect that, when the agreement was made, Teller was merely the legal, and The Henry Investment Company was the equitable, owner of the stock, and that "assigns" was inserted in the agreement as meaning The Henry Investment Company. While the agreement describes Willard Teller as the owner of all the stock of the old company, yet it is entirely competent to show, as the oral evidence abundantly establishes, that he was only the nominal, or legal, while The Henry Investment Company was the equitable, or actual, owner thereof. That the ownership was as plaintiff claims, is also indicated by other parts of the agreement which recite that Willard Teller made the contract "for the stockholders of the old company." The evidence is clear and uncontroverted that the new company was aware that The Henry Investment Company owned the stock, that its president conducted all the negotiations that led to the settlement, that the written contract was made in Teller's name merely because the legal title was in him, and that defendant intended to exempt from assessment this stock so long as it stood in the name of Teller or the investment company, and water was not used by them.

The ordinary meaning of "assigns" is any person to whom property is transferred by any title. Yet it is competent to show by oral evidence that the word as used was intended by the parties to this agreement to be restricted to The Henry Investment Company, the real owner of the stock—which the clause, "or until the same have been actually sold to other parties" itself tends to prove—and that the same exemption from assessment was to attach to

the stock after, as before, the transfer to that company, upon the payment by the latter of the debt for which it was held as a security. Such parol testimony does not add to or vary or contradict the terms of the written instrument, but it explains the same, and shows the real intention of the parties was to employ the word in a restricted sense, a sense which the ordinary meaning includes. The testimony is uncontradicted that Teller held the stock in question as a pledge, under an agreement between him and the owner, The Henry Investment Company, to retransfer or reassign it, when the debt for which it was pledged was paid; and since it clearly appears that Teller made the contract, as the representative of the stockholders, as the legal owner of all the stock of which the actual owner was The Henry Investment Company, it was competent by oral testimony to show—which the testimony admitted by the court proves—that the contract was made for the benefit and in behalf of The Henry Investment Company and that the latter was the real party in interest.

The evidence produced, as indicated, was abundantly sufficient to sustain the decree. Since we have just held that oral testimony was competent and admissible to show the real nature of the transaction, that The Henry Investment Company was at the time the real owner of the stock, and that the parties intended the word "assigns" to apply to it only, and as the water which this stock represents had never been used either by Teller or The Henry Investment Company, it follows that the assessments levied by defendant upon this stock were clearly unauthorized as being in direct violation of the terms of its agreement.

The further point that the contract in question does not control the rights of the parties is without merit. The argument is, that when the new company

·issued its certificate of shares to Teller, instead of ·conveying by deed the water rights to which he was ·entitled under the contract, the contract was discharged, and Teller's rights were measured by the certificates; and that, since, by the by-laws and charter of the new company, certificate holders were obliged to pay assessments for the maintenance and operation of the ditch, Teller, when he accepted these certificates, freed the new company from its obligations under the contract. There is no merit in this contention. The records of the company show that ·these shares were issued to Teller in accordance with ·the written agreement mentioned, and, so long as he and his "assigns," The Henry Investment Company, held these shares and they did not use the water, they were not subject to assessment. A court of equity will look through form to substance, and not allow a party, by a mere subterfuge, to defeat its contract obligations.

Defendant further contends that plaintiff, the pledgee of The Henry Investment Company, may not, though The Henry Investment Company might, maintain the action. It is true that, when plaintiff received the stock as collateral security, being then a stockholder of defendant company, he was charged with knowledge that under its by-laws it might levy assessments upon stock for the maintenance and operation of·its ditch. But the mere fact that Teller received these shares of stock, instead of a deed for the water rights to which he was entitled under the contract, did not give the company the right to disregard its contract and levy assessments upon him or The Henry Investment Company, so long as they did not use the water. Plaintiff also knew that the defendant had agreed not to assess this stock while Teller and the investment company held it, and did not use water.

Plaintiff's receipt of the pledged certificate did not constitute him a purchaser of the stock in the sense that his stock thereby, under the contract, became subject to assessment. The objection that the plaintiff, being a mere pledgee, could not protect his pledged stock, is not tenable. The supreme court of California, in *Herbert Kraft County Bank v. Bank of Orland,* 133 Cal. 64, 65 Pac. 143, has held that a pledgee of stock may thus protect his interest. See, also, *Baldwin v. Canfield,* 26 Minn. 43, 22 Am. & Eng. Enc. of Law (2d ed.), 906-7. This doctrine is particularly applicable in this jurisdiction in view of our statute and decisions construing it, which makes a purported transfer of stock invalid for any purpose whatever, unless made on the books of the company. This statute has been held to apply to a pledgee, as well as purchaser, of stock, who has not had the transfer made on the books of the company, as against the rights of a creditor of the assignor which accrued after the assignment was made, but before its transfer is so noted.—*Conway v. John,* 14 Colo. 30; *Weber v. Bullock,* 19 Colo. 214; *Pueblo Savings Bank v. Richardson,* 39 Colo. 319; *Isbell v. Graybill,* 19 Col. App. 508.

That equity will grant such relief seems clear. At least defendant has not made the point that some other remedy is adequate, and itself prays equitable relief in the cross-complaint. Different courts have applied different remedies. Some have said that an action at law for damages for a refusal to make the transfer is adequate; others, that a writ of mandamus is appropriate; still others, that equity will afford relief.—26 Am. & Eng. Enc. of Law (2d ed.), 882-3; 1 Cook on Stockholders (4th ed.), § 390 *et seq.* Since plaintiff asks that the assessments in question be adjudged void, and defendant prays that they be adjudged valid, a clear case for equitable relief is

presented. It seems appropriate, therefore, that, having obtained jurisdiction for that purpose, the court will grant the additional or incidental relief of ordering defendant company and its officers to make the proper transfer on its books, which but effectuates its decree declaring the assessments void.

The judgment below was right, and is affirmed.

*Affirmed.*

Chief Justice Steele and Mr. Justice Musser concur.