Argued January 23, reversed and decree rendered February 5, rehearing denied February 19, 1918.

# FIRST NAT. BANK *v.* MULTNOMAH STATE BANK.

### (170 Pac. 534.)

**Injunction—Sale of Stock for Illegal Assessment.**

1. Suit in equity for protection of a private right being allowed by Section 389, L. O. L., where action at law cannot furnish a plain, speedy and adequate remedy, sale of stock for an illegal assessment may be enjoined.

**Corporations—Pledge of Stock—Protection by Pledgee.**

2. The pledgee of stock may maintain suit to protect his rights in and to it where the pledgor might have done so.

**Constitutional Law—Obligation of Contracts—Amendment of Constitution—Charter of Corporation.**

3. Stock in a bank subscribed for when Article XI, Section 3, of the Constitution, provided, as it did when the corporation was created, that stockholders should be liable for the corporation's indebtedness only to the amount of their unpaid subscription, was not subject to the subsequent amendment (see Laws 1913, p. 8) imposing a double liability on stockholders in a bank.

**Constitutional Law—Obligation of Contracts—Corporations—Liability of Stock.**

4. A bank having been incorporated when Article XI, Section 3, of the Constitution, provided that stockholders should be liable for the corporation's indebtedness only to the extent of their unpaid subscription, holders of stock subscribed for after the going into effect of the amendment of Section 4585, L. O. L., by Laws of 1911, page 243, increasing the liability, was not subject thereto; the charter controlling.

From Multnomah: George N. Davis, Judge.

Department 2.    Statement by Mr. Justice Moore.

This is a suit to enjoin the sale of bank stock and to enforce a lien thereon. The cause being at issue, was tried upon an agreed statement of facts to the effect that the plaintiff, the First National Bank of St. Johns, Oregon, is a corporation; that the defendant, the Multnomah State Bank, is also a corporation and was organized under the laws of the State of Oregon April 1, 1911, and that the codefendants are its officers and

directors; that on December 26, 1911, H. Rostad subscribed for and paid $3,000 the par value of 30 shares of the capital stock of the defendant bank, consisting of four certificates giving the number of each respectively, which written evidence was delivered to him; that on January 2, 1914, he borrowed from the plaintiff $2,000 for which he gave a promissory note, and to insure the payment thereof, pledged and assigned his stock to the plaintiff which holds it as collateral security; that the Superintendent of Banks of the State of Oregon on December 15, 1914, from an examination of the financial conditions of the defendant bank, determined that its capital stock had been impaired below the specified amount to the extent of $15,000, the entire par value thereof, and then notified the defendant officers to make good the decrease; that pursuant thereto a meeting of the stockholders was duly called, upon whom, including Rostad, notice was served, but neither he nor the plaintiff nor a representative of either attended the meeting, at which a resolution was adopted attempting to levy an assessment of $100 a share on all the stock of the defendant bank, which sum was declared to be payable in 60 days after notice thereof; that such information was duly given, but no payment on account of the stock so held by the plaintiff has ever been made, nor did it or Rostad ever consent to the assessment; that by reason of the failure to pay any part of that sum, the officers of the bank ordered the 30 shares of stock to be sold, and unless restrained such stock will be sold for the purpose of collecting the amount so attempted to be assessed. Based thereon it was determined that the equities were with the defendants, whereupon the suit was dismissed and the plaintiff appeals.

REVERSED AND DECREE RENDERED.

For appellant there was a brief over the names of *Mr. Omar C. Spencer* and *Messrs. Carey & Kerr,* with an oral argument by *Mr. Spencer.*

For respondents there was a brief and an oral argument by *Mr. Charles A. Johns.*

MR. JUSTICE MOORE delivered the opinion of the court.

1, 2. It is insisted by defendants' counsel that no error was committed in dismissing the suit, for that the plaintiff had an adequate remedy at law for the recovery of any damages it might have sustained by reason of the threatened sale of the property. The case relied upon as sustaining this view is that of *Parsons* v. *Hartman,* 25 Or. 547 (37 Pac. 61, 42 Am. St. Rep. 803, 30 L. R. A. 98), where it was held that a suit by a judgment debtor would not lie to enjoin the sale of personal property under execution, upon the ground that it was exempt by law from sale under judicial process, unless the property was a keepsake or memento of some kind and for that reason possessed a special value to the owner, the loss of which could not be compensated in damages, since the judgment debtor had an adequate remedy at law for the unlawful seizure or detention, except as to property possessing such peculiar value. In a note to that case in 30 L. R. A. 98, 99, it is said:

"The case of *Parsons* v. *Hartman* denies the right to obtain an injunction against an execution sale of exempt personal property. There is some conflict of authorities on this question, but where there is a special statutory remedy, that is quick, adequate, and affords the same relief as would be obtained by injunction, as in *Parsons* v. *Hartman,* the rule adopted in that case is supported by some authorities. But

where the objection to the injunction is, that there is a remedy by replevin, trover, damages, or the like, the weight of authority is in favor of granting the injunction.''

Shares of stock in a corporation, though treated as personal property, are in the nature of choses in action: Helliwell, Stock & Stockholders, § 9; *Commonwealth* v. *Peebles,* 134 Ky. 121 (119 S. W. 774, 20 Ann. Cas. 724, 23 L. R. A. (N. S.) 1130). A clause of the stipulation of facts, which was adopted by the court in referring to such property reads:

''Said stock hereinbefore listed is now in the possession of plaintiff subject to its claim therein as herein set out, and is now shown by the books of the defendant bank to be owned by H. Rostad.''

The facts so agreed upon show that though Rostad assigned and delivered his shares of stock to the plaintiff to secure the payment of $2,000, as evidenced by his promissory note, it nowhere appears from an inspection of the transcript before us, whether or not a request was ever made to have noted upon the books of the defendant bank any memorandum that such certificates were held by the plaintiff as pledgee.

In this state a chattel mortgage when duly recorded creates only a lien upon the goods and chattels hypothecated, but upon a default in the conditional transfer, such lien is converted into a qualified ownership which entitles the mortgagee to the possession of the property: Section 7410, L. O. L; *Knowles* v. *Herbert,* 11 Or. 54, 240 (4 Pac. 126); *Backhaus* v. *Buells,* 43 Or. 558 (72 Pac. 976, 73 Pac. 342); *Ayre* v. *Hixson,* 53 Or. 19 (98 Pac. 515, 133 Am. St. Rep. 819, Ann. Cas. 1913E, 659); *Swank* v. *Elwert,* 55 Or. 487 (105 Pac. 901). A text-writer in speaking of the delivery of

property by a debtor to his creditor to hold until the liability is discharged, remarks:

"A pledge of stock is a bailment as security for an obligation.   Contrary to the rule with reference to a mortgage of realty, the pledgee acquires the legal title to the property pledged.   If the pledgor retains possession, he does so merely as the agent of the pledgee. Where stock is transferred as security for a debt by an assignment absolute on its face, parol evidence is admissible to show the true nature of the transaction. A court of equity, upon full facts shown, will give effect to the actual contract intended by the parties": Helliwell, Stock & Stockholders, § 356.

This author also observes:

"Where the pledgee is not apprehensive of liability, he may have stock transferred to himself, personally, on the corporate books.   Where, however, there is danger of such liability, the pledgee may have the stock registered in his name 'as pledgee' in which case no liability attaches": Id., § 357.

Another author in commenting upon the right of a court of equity to restrain the sale of stock for an amount alleged to have been improperly levied thereon, in excess of the subscription price, says:

"Where an illegal assessment has been made, and the stock is about to be sold, a stockholder may enjoin the sale and cause the assessment to be set aside": 1 Cook, Corp. (6 ed.), § 134.

To the same effect, see also, 2 Clark & Mar. Priv. Corp., § 495; 10 Cyc. 489; *Redkey Citizens' Natural Gas etc. Co.* v. *Orr,* 27 Ind. App. 1 (60 N. E. 716). The assignment of stock as security for the payment of a debt, creates such a privity between the pledgee and pledgor that the former may maintain a suit in equity to protect his rights in and to the property, whenever the latter might have done so: 22 Am. & Eng. Ency. Law (2 ed.), 907; *Herbert Kraft Co. Bank* v.

*Bank of Orland,* 133 Cal. 64 (65 Pac. 143); *Farmers' Pawnee Canal Co.* v. *Henderson,* 46 Colo. 37 (102 Pac. 1063).

It is believed that an action at law could not have furnished the plaintiff as plain, speedy and adequate remedy as a suit in equity would have afforded: Section 389, L. O. L.; *South Portland Land Co.* v. *Munger,* 36 Or. 457 (54 Pac. 815, 60 Pac. 5); *Benson* v. *Keller,* 37 Or. 120 (60 Pac. 918); *Livesley* v. *Johnston,* 45 Or. 30 (76 Pac. 13, 946, 106 Am. St. Rep. 647, 65 L. R. A. 783); *Hall* v. *Dunn,* 52 Or. 475 (97 Pac. 811, 25 L. R. A. (N. S.) 193); *Dose* v. *Beatie,* 62 Or. 308 (123 Pac. 383, 125 Pac. 277); *Campbell's Automatic Safety Gas Burner Co.* v. *Hammer,* 78 Or. 612 (153 Pac. 475); *Butson* v. *Misz,* 81 Or. 607 (160 Pac. 530). This test being the criterion for invoking an exercise of chancery jurisdiction, the suit herein was properly brought in a court of equity.

3, 4. It is contended by plaintiff's counsel that when the defendant bank was incorporated and also when Rostad subscribed, paid the full par value thereof and received his certificates of stock, Article XI, Section 3, of the Constitution was as follows:

"The stockholders of all corporations and joint stock companies shall be liable for the indebtedness of said corporation to the amount of their stock subscribed and unpaid, and no more."

That there then existed no reserve power whereby the articles of incorporation of any such artificial being or company could be altered, amended or repealed so as to increase the liability of a stockholder in excess of the sum so limited; that the clause of the organic law quoted made the charter of the defendant bank a contract between it and its stockholders, and between the latter and the state, thereby authorizing the holders of

corporate stock to invoke and rely upon Article I of Section 21 of the fundamental law of Oregon, which so far as material herein, reads: "No * * law impairing the obligations of contracts, shall ever be passed"; that a subsequent amendment was made to Article XI, Section 3, of the Organic Act, by adding to it this language:

"Excepting that the stockholders of corporations or joint stock companies conducting the business of banking shall be individually liable equally and ratably and not one for another, for the benefit of the depositors of said bank, to the amount of their stock, at the par value thereof, in addition to the par value of such shares": Laws Or. 1913, p. 8.

That no retroactive force was imparted by the amendment to the original clause of the Constitution, whereby any authority was granted to assess shares of stock which had been subscribed for, the par value thereof paid in full, and the certificates delivered prior to November 29, 1912, when the amendment went into effect; and that the attempt to impose upon the stock so held by the plaintiff an additional burden was violative of the Constitution of the United States and of the State of Oregon and void, and hence errors were committed in dismissing this suit and in not granting the relief prayed for in the complaint.

It is argued by defendant's counsel that the amendment of Section 4585, L. O. L., which went into effect May 20, 1911, or 90 days from February 18th of that year, the end of the legislative session (Const. Or., Art. IV, § 28), commanded the superintendent of banks, when it appeared to him that the capital stock of any state bank had been reduced below the amount specified in its articles of incorporation, to notify the officers and directors of such bank to make good the impairment within 90 days from the requisition, where-

upon it became incumbent upon such officers and directors immediately to call a meeting of the stockholders for that purpose (Laws Or. 1911, Chap. 171, p. 243); and that such enactment so far as it relates to the collection of an assessment levied upon bank stock is a change in the method of procedure only and for that reason is not violative of any constitutional right which is guaranteed to a stockholder. The case relied upon as sustaining the argument adduced is that of *Commercial Nat. Bank* v. *Weinhard,* 192 U. S. 243 (48 L. Ed. 425, 24 Sup. Ct. Rep. 253), where it was held that Section 5205, Rev. Stats. U. S., was intended to and did confer upon a national banking association the privilege of declining to levy the assessment to make good a deficiency in its capital after notice by the Comptroller of the Currency so to do, and to elect instead to wind up the bank under Section 5220; that the shareholders and not the directors have the right to decide which course should be pursued; and that an assessment made upon the shares by the directors, without action by the stockholders, was void. The Federal procedure thus adverted to seems to have been adopted by the enactment of our banking law upon the same subject. The case thus cited is applicable only to the extent that the assessment undertaken to be levied in this instance was made by the stockholders, but that circumstance is unimportant if the burden attempted to be imposed trenched upon any constitutional assurance. A statute, however, which gives an additional remedy against a stockholder, without increasing his pre-existing liability, has been held not to impair the obligation of the contract: *Harrison* v. *Remington Paper Co.,* 140 Fed. 385 (72 C. C. A. 405, 5 Ann. Cas. 314, 324, and note, 3 L. R. A. (N. S.) 954). But that rule has no application herein.

It is further argued by defendants' counsel that the assessment was made against the stock only, that no personal liability was attempted to be imposed upon the stockholders, and that though stock may be sold for a delinquent assessment, such procedure is not in conflict with any provision of the organic law of Oregon. In support of this assertion, reliance is had upon the case of *Wall* v. *Basin Mining Co.,* 16 Idaho, 313 (101 Pac. 733, 22 L. R. A. (N. S.) 1013), a head-note to which reads:

"Section 17 of Article II of the Constitution of this State, which provides, 'Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable in any amount over or above the amount of stock owned by him,' relates to and limits the personal liability of a stockholder, but in no way limits the power of the corporation to make assessments upon stock fully paid up, and to subject such stock to sale in default of the payment of such assessment."

It will be remembered that the amendment made in November, 1912, to Article XI, Section 3, of the Constitution of this State, declares:

"That the stockholders of all corporations * * conducting the business of banking shall be individually liable, equally and ratably and not one for another, for the benefit of the depositors of said bank, to the amount of their stock, or the par value thereof, in addition to the par value of such shares."

It will thus be seen that our Constitution places a personal liability upon stockholders of a bank, and hence the case last cited is not controlling herein.

Considering the legal principles put forth by plaintiff's counsel, the rule is firmly established that a charter is a contract between the corporation and its stockholders, and also between them and the State,

which act of incorporation will be protected by the United States Constitution: 2 Cook, Corp. (4 ed.), §§ 493, 495. This author at Section 497 of that volume, says:

"A statute passed subsequently to the granting of a charter, and increasing the liability of a stockholder on his stock for debts already incurred, is unconstitutional and void unless the legislature has reserved the right to alter or amend the charter."

No power was reserved whereby the legislative assembly was authorized to impose the burden undertaken to be laid by the amendment of Section 4585, L. O. L. That enactment, it will be kept in mind, went into effect after the defendant bank was incorporated but before Rostad subscribed for and received his certificates of stock. He and his pledgee, the plaintiff herein, had the right to rely upon the organic act that was in force when the defendant bank was incorporated, which fundamental law is superior to the amendment last mentioned.

In *Harrison* v. *Remington Paper Co.*, 140 Fed. 385 (72 C. C. A. 405, 5 Ann. Cas. 314, 3 L. R. A. (N. S.) 954), it was held that a stockholder of a corporation, by his subscription for stock or by his acceptance of it, agreed with the corporation and its creditors that he would perform the obligations and discharge the duties imposed upon a stockholder by the Constitution, the statutes, and the law then in force; that his liability to creditors sprang from that contract; and that any repeal or change of the remedies of a creditor of a corporation against its stockholders which substantially obstructed or retarded the enforcement or lessened the value of the agreement, impaired its obligation, and was unconstitutional and void.

In *Converse, Receiver,* v. *Aetna Nat. Bank,* 79 Conn. 163 (64 Atl. 341, 7 Ann. Cas. 75), in construing a statute of Minnesota, it was decided that the amount for which a stockholder could be assessed to pay the debts of a corporation, in the event of its insolvency, depended upon and was determined by the laws of the state creating the corporation, which enactments were in force when he became a stockholder; that the mode of enforcing the obligation which was contractual in its nature might be varied within reasonable limits by subsequent legislation, but its amount could not thereafter be materially increased without the stockholder's assent.

In *Yoncalla State Bank* v. *Gemmill,* 134 Minn. 334 (159 N. W. 798, L. R. A. 1917A, 1223), Section 3 of Article XI of the organic law of this state was construed, a head-note reading:

"At the time the plaintiff, a state bank of Oregon, was organized and defendant became owner of shares of stock therein the Constitution of said state contained no provision reserving in the state the right to amend or alter the charter of the bank so as to increase the obligations of its stockholders, but on the contrary a provision of the Constitution at that time did guarantee that a stockholder should not be liable beyond the unpaid par value of the shares of stock owned. A subsequent amendment of said provision imposing a double liability upon stockholders in banks, cannot be held to embrace those who become such previous to the adoption of the amendment."

In *Norris Safe & Lock Co.* v. *Weaver,* 81 Or. 670, 672 (160 Pac. 807), Mr. Justice BURNETT, referring to the effect of such amendment, remarks:

"Neither can it be made to impair the obligation of a subscription contract made before its adoption so as to double the original liability. So far as the increased responsibility is concerned, the utmost effect

87 Or.—28

it can have is to operate in favor of the depositors in a bank incorporated since the Constitution was so amended."

From the time the decision was rendered in the famous case of *Dartmouth College* v. *Woodward,* 4 Wheat. (U. S.) 518 (4 L. Ed. 629), to the present, it has been uniformly held that any legislation that impairs the terms or conditions of a pre-existing contract is void: *State ex rel.* v. *Sears,* 29 Or. 580 (43 Pac. 482, 46 Pac. 785, 54 Am. St. Rep. 808); *Lorntsen* v. *Union Fisherman's Co.,* 71 Or. 540, 544 (143 Pac. 621).

The amendment of the clause of the Constitution referred to cannot be invoked to impair the obligations of the pre-existing contract between the stockholders of the defendant bank and that corporation, nor to abridge the agreement existing between such stockholders and the State of Oregon, and this being so the decree is reversed and one will be entered here granting to the plaintiff the relief prayed for in its complaint.    Reversed and Decree Rendered.

Mr. Chief Justice McBride, Mr. Justice McCamant and Mr. Justice Bean concur.