Argued March 19; affirmed November 25, 1930

# HABERLACH *v.* TILLAMOOK COUNTY BANK
## ET AL.
### (293 P. 927)

*H. T. Botts* of Tillamook (Botts & Winslow of Tillamook on the brief) for respondent.

*Gus C. Moser* and *Richard Sleight* both of Portland for appellants.

RAND, J. Prior to the amendment of section 3, article XI of the Oregon Constitution, which amendment went into effect on November 29, 1912, the Tillamook County Bank was organized and plaintiff subscribed for 37 shares of its capital stock and paid the par value thereof in cash. Under its articles of incorporation the bank had an authorized capital stock of $75,000, divided into 750 shares of the par value of $100. When the bank was organized and plaintiff became a stockholder thereof, section 3 of article XI of the state constitution provided that:

"The stockholders of all corporations and joint stock companies shall be liable for the indebtedness of said corporation to the amount of their stock subscribed and unpaid and no more."

The amendment added thereto the following words:

"excepting that the stockholders of corporations or joint stock companies conducting the. business of banking shall be individually liable equally and ratably and not one for another, for the benefit of the depositors of said bank, to the amount of their stock, at the par value thereof, in addition to the par value of such shares."

After the adoption of said amendment and in 1915, with the approval of the superintendent of banks, the

directors; under the authority of the stockholders, decreased the capital stock of the bank from $75,000 to $40,000 and caused a new corporation to be organized to take over and acquire title to the bank building which prior thereto the bank had owned, and thereupon plaintiff delivered up for cancelation his certificate for 37 shares and accepted in lieu thereof a certificate for 20 shares of the capital stock of the bank and 17 shares of the stock issued by the new corporation in payment for the building. On March 19, 1927, the bank became insolvent and, pursuant to statute, the superintendent of banks took possession of its assets and business, and thereafter, claiming to be authorized thereto by section 3 as amended and statutes passed subsequent to its adoption, levied an assessment of $100 per share against all the stockholders of the bank, including the 20 shares owned and held by plaintiff. Subsequently, the superintendent of banks, pursuant to section 154, ch. 207, Laws 1925, filed and caused to be recorded in the records of deeds of Tillamook county a certified copy of the notice of said assessment which would, if the assessment is valid, constitute a lien for $2,000 upon two lots in the city of Tillamook which plaintiff owned, and would entitle the superintendent of banks to have said property sold in satisfaction of said lien. Plaintiff, claiming the lien to be invalid because of his having paid the full par value of his stock before the adoption of the amendment, brought this suit seeking to have the lien declared invalid and to have his title to the lots quieted. The defendants answered, setting up the foregoing facts and alleging that, by reason of the said acts of the stockholders and directors in reducing the amount of the capital stock and plaintiff's action in delivering up his original stock for cancelation and his acceptance, in lieu thereof, of 20 shares of the bank

stock and 17 shares in the new corporation, he was subject to a stockholder's double liability, and prayed that the property be decreed subject to the lien that the lots be sold in satisfaction thereof. The court sustained a demurrer to the answer and defendants appealed.

The right of the stockholders and directors to reduce the amount of the capital stock of the bank and to sell and convey the bank building has never been questioned and is not questioned now.

It is admitted that the bank was then solvent and that no depositor or other creditor was prejudiced by the action then taken nor is there any question made as to the necessity of the assessment in order to pay the depositors of the bank, or of the regularity of proceedings taken by the superintendent of banks, if plaintiff is subject to the double liability claimed. Hence, the demurrer was properly sustained if plaintiff was not subject to such double liability.

It is settled law that when a person subscribes for shares of stock in a corporation and his subscription is accepted by the corporation, the constitution of the state and all valid laws then in force which limit the liability of a stockholder become a part of the subscription contract and are incorporated in it: *Rasor v. West Coast Development Co.,* 98 Or. 581 (192 P. 631) ; *Harrison v. Remington Paper Co.,* 140 Fed. 385 (72 C. C. A. 485, 5 Ann. Cas. 314, 3 L. R. A. (N. S.) 954). In such case, the stockholder agrees that, in consideration of the benefits he expects to derive from the stock ownership, he will perform all obligations that the law, at the time he enters into the contract, imposes upon a stockholder and the corporation agrees that, in consideration of his purchase of the stock, it will not enforce as against him any obligation not imposed by law or

promised at the time the subscription contract was made. Such a contract imposes mutual obligations upon the part of each which each is bound to perform according to the terms of the contract. As was said by the supreme court of Ohio in *Ireland v. Palestine, etc., Turnpike Co.,* 19 Ohio 369:

"* * * In a contract between the company and a stockholder, or in an action by the former, or its creditors, against the latter, the stockholder is to be regarded as an individual person, separate and distinct from the corporation. He becomes a stockholder by virtue of a contract with the company, and he has a right to stand upon the terms of that contract, interpreted and limited by the laws under which it was made. By his contract with this company Ireland agreed to pay a specified sum, and no more. This sum he has fully paid, and to require him to contribute an additional amount, would be to violate the contract between the parties."

■ The duty resulting therefrom upon the part of each to perform is the obligation of the contract in the sense in which these words are used in the state constitution, which provides that: "No * * * law, * * * impairing the obligations of contracts, shall ever be passed" (§ 21, art. I), and in the Federal Constitution, which provides that: "No state shall * * * pass any * * * law impairing the obligation of contracts" (§ 10, art. I). As the court said in *Curran v. Arkansas,* 15 How. 304 (14 L. Ed. 705):

"* * * The obligation of a contract, in the sense in which those words are used in the Constitution, is that duty of performing it, which is recognized and enforced by the laws."

■■ The impairment of the obligation of a contract, which is forbidden by the Federal Constitution, applies to an amendment of the State Constitution as well as to the passage of a state law: *Louisiana v. Jumel,* 107 U. S.

711 (2 S. Ct. 128, 27 L. Ed. 448). And whether the passage of a state law impairs the obligation of a contract is a federal question, in the determination of which the rulings of the state court are not binding upon the federal courts.

■ It is also well settled that the articles of incorporation of a corporation organized and incorporated under the general laws of a state create a contract between the state and the stockholders to the same extent as does a charter granted by the legislature of the state. In either case, the contract arising therefrom is protected by the Federal Constitution, and the contract thus created cannot be impaired by a subsequent act of the legislature. This is settled by the *Dartmouth College Case,* 17 U. S. 517 (4 L. Ed. 629). Thus, in referring to that case and other decisions of that court, the court, in the *Binghampton Case,* 3 Wall. 51 (18 L. Ed. 137) said:

"* * * We have supposed, if anything was settled by an unbroken course of decisions in the Federal and State courts, it was, that an act of incorporation was a contract between the State and the stockholders. All courts at this day are estopped from questioning the doctrine. The security of property rests upon it, and every successful enterprise is undertaken, in the unshaken belief that it will never be forsaken. A departure from it *now* would involve dangers to society that cannot be foreseen, would shock the sense of justice of the country, unhinge its business interests, and weaken, if not destroy, that respect which has always been felt for the judicial department of the Government. An attempt even to reaffirm it, could only tend to lessen its force and obligation. It received its ablest exposition in the case of Dartmouth College v. Woodward, which case has ever since been considered a landmark by the profession, and no court has since disregarded the doctrine, that the charters of private corporations are contracts, protected from invasion by the Constitu-

tion of the United States. And it has since so often received the solemn sanction of this court, that it would unnecessarily lengthen this opinion to refer to the cases, or even enumerate them."

The doctrine so announced by the federal courts has been followed and applied by this court whenever the same question has been presented for decision in this court. Thus, in *First National Bank v. Multnomah State Bank,* 87 Or. 423 (170 P. 534), the question was whether a stockholder of a bank, who before the amendment of section 3 had paid the par value of his stock, was liable to a double assessment for the benefit of depositors, and it was held that such a stockholder was not subject to a double liability. Again, in the same case, reported in 89 Or. 37 (173 P. 462), in denying a petition for rehearing Mr. Justice McCamant, speaking for the court, said:

"* * * The corporation was organized in 1911, and the contract rights of stockholders with the corporation were fixed by the law as it stood at that time. These rights could not be impaired by a later statute."

And such was the holding in *Norris Safe & Lock Co. v. Weaver,* 81 Or. 670 (160 P. 807), where the court said:

"* * * So far as the increased responsibility is concerned, the utmost effect it can have is to operate in favor of the depositors in a bank incorporated since the constitution was so amended."

The language quoted from the opinion in the last case must be interpreted in the light of the particular facts then being decided. When read in connection with those facts, it will be seen that the court was dealing with stock which had been issued and paid for before the adoption of the amendment of section 3.

The superintendent of banks contends that because plaintiff surrendered his original stock and accepted a

reissue of 20 shares thereof at the time the capital stock of the bank was decreased this operates as a consent upon his part to waive his exemption under the old constitution and to become liable for a double liability under the new constitution. He cites in support of his contention *Hoge v. Railroad Co.,* 99 U. S. 348 (25 L. Ed. 303), and *Senn v. Levy,* 111 Ky. 318 (83 S. W. 776). The Hoge case can have no application here because the question there was whether a stockholder of a railroad company, which had been incorporated for the purpose of taking over the property of other railroads, could claim an exemption from taxes for the property of one of the companies which had been consolidated, which tax exemption had been granted by an act of the legislature of the state, and it was held that, under the conditions stated, the exemption claimed could not be maintained. The case of *Senn v. Levy,* supra, was expressly overruled by the Court of Appeals of Kentucky in *Commonwealth v. Belknap, etc., Co.,* 182 Ky. 155 (206 S. W. 277), in so far as it has any application to the facts of this case.

A case more analogous under the facts than the Hoge case is *Farrington v. Tennessee,* 95 U. S. 679 (24 L. Ed. 558), where the charter involved contained a tax exemption clause reading as follows:

"That the said company shall pay to the State an annual tax of one-half of one per cent on each share of the capital stock subscribed, which shall be in lieu of all other taxes."

and it was held:

"that the exemption was a contract between the State and the bank limiting the amount of tax on each share of stock, and that a subsequent revenue law of the State which imposed additional taxes on the shares in the hands of the shareholders impaired the obligation of the contract and was void."

■ Our conclusion is that a statute or a constitutional amendment giving the creditors of a bank a new remedy against stockholders cannot affect those who took stock before its passage, and that the double liability which is sought to be imposed in this case does not apply to plaintiff's 20 shares of stock because it is merely a reissue of that number of shares for which plaintiff had subscribed and paid before the adoption of the amendment to the State Constitution. We think that the Oregon cases previously cited fully sustain our conclusion. The same conclusion results from the decisions of other courts in the following cases: *Grand Rapid Savings Bank Appeal,* 52 Mich. 557 (18 N. W. 356); *Yoncalla State Bank v. Gemmill,* 134 Minn. 334 (159 N. W. 798, L. R. A. 1917A, 1223), which is a case dealing with this particular amendment of the Oregon Constitution; *Dagg v. Hammons,* 34 Ariz. 445 (272 P. 643); *Ochiltree v. Iowa Railroad Co.,* 88 U. S. 249 (22 L. Ed. 546); *Enterprise Ditch Co. v. Moffit,* 58 Neb. 642 (79 N. W. 560, 75 Am. St. Rep. 122, 45 L. R. A. 647); *Garey v. St. Joe Mining Co.,* 32 Utah 497 (91 P. 369, 12 L. R. A. (N.S.) 554). Also see 6 Page on Contracts, (2d Ed.) § 3662, and 2 Morse on Banks & Banking, (6th Ed.) § 676.

■ In the Ochiltree case the constitution of the state first contained a provision imposing upon stockholders of corporations a double liability, and stock had been subscribed for while that provision was in effect. Subsequently, the constitution was amended so as to make stockholders liable only to the amount of their stock. The defendant became a stockholder in the corporation after the repeal of the double liability clause by an original subscription of stock for which it made full payment and the question was whether it was liable in double the amount of its stock for debts owing by the

corporation prior to the repeal. Plaintiff was a judgment creditor of the corporation and sought to impose such double liability against the defendant, and it was held that the defendant was not liable for the double liability or for the debts of the corporation beyond the amount of its stock, although it was held that persons who became stockholders of the corporation before the amendment were subject to a double liability.

It has been argued here that where the capital stock of a bank has been increased after the constitutional amendment went into effect and stock had been issued prior to the amendment, the par value of which had been paid, and new stock authorized by the increase of the capital stock of the bank was subsequently issued by the bank, that if a different liability were to apply to the new subscribers which would not apply to the original stockholders, great uncertainty and inconvenience would arise therefrom. The same condition existed in the Ochiltree case, for there those who subscribed for their stock before the amendment were held liable for double liability, while those who had subscribed for stock after the amendment were subject only to a single liability. This condition of affairs was, in effect, held to be of no legal consequence, the rule applicable to the subscribers being that they were liable or not liable according to the constitutional provision which was in force at the time they became stockholders. Hence, the argument advanced in support of the contention of the superintendent of banks, so far as the legal consequences are concerned, is of no weight. We agree with the contention that the stockholder may waive his constitutional right and become liable by his own act or consent, and that, for this purpose, it is not even necessary that he should give his express or direct consent, that such consent may be implied or he may be

estopped from denying it by his acts or by his silence and apparent acquiescence: *Ireland v. Palestine, etc., Turnpike Co.,* supra.

However, we cannot find any fact or circumstance in this case showing that plaintiff ever waived his constitutional right, either expressly or impliedly, nor is he estopped by any act of his own, either as alleged in the answer, or otherwise.

■ Defendants also contend that the imposition of this additional liability is an exercise of the police power of the state and, as such, it must be upheld even though it impairs the obligation of plaintiff's contract. That contention was answered by the court in the Yoncalla State Bank, supra. It was there held that the right to regulate and control the banking business under the police power of the state cannot go to the extent of imposing a personal liability upon the stockholders in a bank contrary to the express constitutional provision in force at the time of the organization of the bank and the purchase of the stock by the stockholder. If this contention as to the police power of the state could be upheld, it would have the effect of depriving stockholders of corporations of all constitutional guaranties limiting the liability of a stockholder. Such a contention is wholly without merit.

For the reasons stated, and as held in *Schramm v. Done,* this day decided, the demurrer was properly sustained and the judgment appealed from must be affirmed.

KELLY, J., did not participate in the hearing or decision of this case.